## BOLTON v. STATE. (8 Div. 507.)

(Supreme Court of Alabama. April 5, 1923.)

1. Homicide ⊜300(8)—Evidence for accused held to raise issue of self-defense.

Evidence on behalf of defendant that he was sitting on the porch of his brother's home, when deceased rode by and shortly thereafter returned, drew a gun, and started toward defendant, threatening to kill him, whereupon defendant procured a shotgun which was standing just inside the doorway, and killed deceased, held sufficient to raise the issue of self-defense.

2. Homicide ⊜118(1)—Guest in brother's dwelling need not retreat.

Where defendant was a guest in his brother's dwelling, he was entitled to the protection the law afforded the owner or more permanent occupant of the dwelling, and it was his right to stand his ground and repel assaults, actual or menaced, the same as if he had been under his own rooftree, so that he cannot be deprived of his right of self-defense on the ground that he did not retreat.

3. Homicide ⊜276—Whether force was greater than necessary to repel attack is jury question.

Whether defendant, who was rightfully in his brother's home, resorted to greater force than the necessities of his defense required, is a question for the jury.

4. Homicide ⊜199—Evidence defendant had just been informed of assault by deceased on defendant's sister is admissible.

In a prosecution for homicide, evidence that defendant had, just before the killing, been informed for the first time by his sister that deceased had made a felonious assault on her, is admissible to show provocation sufficient to reduce the killing from murder to manslaughter.

5. Homicide ⊜282—Whether evidence of assault by deceased on defendant's sister was manufactured is jury question.

Whether evidence that shortly before the homicide defendant's sister had informed him of a felonious assault on her by deceased was manufactured for the occasion was a question for the jury.

Appeal from Circuit Court, Morgan County; Robert C. Brickell, Judge.

Harry Bolton was convicted of murder in the first degree, and he appeals. Reversed and remanded.

G. O. Chenault, of Albany, for appellant.

A guest in a dwelling house is entitled to the protection the law affords to the owner or permanent occupant. Crawford v. State, 112 Ala. 27, 21 South. 214; Thomas v. State, 13 Ala. App. 53, 69 South. 315. Evidence of the assault made by deceased upon the sister of defendant, communicated only a few minutes before the fatal difficulty, was admissible. Rutledge v. State, 88 Ala. 85, 7

South. 335; Roberts v. State, 68 Ala. 164; 25 Am. & Eng. Ency. Law (2d Ed.) 273; 21 Cyc. 823; Suell v. Derricott, 161 Ala. 269, 49 South. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636.

Harwell G. Davis, Atty. Gen., for the State.

No brief reached the Reporter.

SAYRE, J. Defendant Bolton was convicted of murder in the first degree, was sentenced to the penitentiary for life, and now appeals. We are of opinion that two very material errors were committed in the trial and that the judgment of conviction must be reversed.

[1] 1. The court charged the jury at the state's request as follows:

"If you believe the evidence in this case beyond a reasonable doubt, you should find the defendant guilty of murder."

Evidence for the state tended to show the guilt of defendant as charged; but there was evidence for the defendant tending to establish facts as follows: The house where lived Arthur Bolton, defendant's brother, faced a road which passed, as variously estimated by the witnesses, within 20 to 40 steps of the front door—one witness said 40 to 50 feet. A wide door led into the hall between the two rooms of the house. Defendant and his family lived with his father close at hand, but defendant was a daily visitor in his brother's house. In the afternoon of the day on which deceased was killed, defendant sat in the door of his brother's house talking with his sister, the stepmother of deceased. Deceased, driving a buggy, passed along the road in front of the house without incident, but within 5 or 10 minutes drove back again, drew his horse up to the gate, stopped, drew a pistol out of the bosom of his "jumper," presented it at defendant, and said, "Oh, yes, God damn you, I have got you now;" whereupon defendant jumped for a shotgun which stood close at hand in the corner of the hall, and shot deceased twice. Defendant accounted for the presence of the gun by the testimony of himself and other members of the family to the effect that it belonged to his nephew, a young son of his brother Arthur, and had been loaded, one barrel with buckshot, the other with smaller shot, for the purpose of shooting dogs that prowled about the house; but this was a mere detail, as was the fact that a pistol was found near the body of deceased, where he fell in the road. This evidence tended to show a case of self-defense, and, if not accepted by the jury as sufficient to raise a reasonable doubt as to that, still tended to establish provocation sufficient to reduce the killing to manslaughter in the first degree. Its credibility was for the jury.

[2, 3] Charges refused to defendant lead us to think that the trial court charged the jury in the terms indicated by the quoted charge on the theory that a way of retreat was open to defendant and for that reason the plea of self-defense was not available. If this was the theory, it was, in our judgment, misconceived. If the evidence on this subject was accepted by the jury, the defendant was a guest in his brother's dwelling and was entitled to the protection the law afforded the owner or more permanent occupant; it was his right to stand his ground, repel assaults, actual or menaced, as if he had been under his own rooftree. Defendant was rightfully in his brother's home and had the right there to defend himself, not resorting to greater force than the necessities of his defense required—that, too, being a question for jury decision. Crawford v. State, 112 Ala. 27, 28, 21 South. 214.

[4] 2. Defendant offered to show that during the few minutes which elapsed between the time when deceased first passed the house and his return his sister informed him, for the first time, that deceased some weeks before had made a felonious assault upon her, had attempted to ravish her. This evidence was excluded and defendant reserved an exception. This was error. The proffered evidence of his sister's accusation against deceased, brought to the knowledge of defendant only a few minutes before the killing, may have led the jury to conclude that defendant, by reason of passion thus aroused, was not guilty of murder, which implies malice, but of manslaughter only. In Rogers v. State, 117 Ala. 147, 22 South. 668, evidence that two days before the killing defendant came to the knowledge that decedent, three or four days before the killing, had eloped with his young daughter, was held to have been properly excluded; but the court said that, if deceased had debauched the girl,

"in such case, if the mortal blow had been given by the father immediately upon hearing of the wrong to his daughter, and in the heat of passion engendered by the fact coming to his knowledge, all the facts would have been admissible to eliminate the element of malice from the act by referring it to passion which had not had time to cool, and thus reducing the homicide to manslaughter."

In Robinson v. State, 108 Ala. 14, 18 South. 732, a note from defendant's sister was found on the body of deceased. This note went to show that deceased had met defendant's sister at the place of the killing by appointment and for the purpose of having illicit intercourse with her. This court held that evidence of these facts was properly excluded from the jury, for the reason that it did not appear that defendant knew of the note or the assignation prior to the killing; but the court said:

"Had he [defendant] known of this correspondence and its character, it and his knowl-

edge of it would have been competent evidence of premeditation and malice on his part, unless he came by it for the first time to a knowledge of the illicit relations between the deceased and his sister, and immediately, in the heat of passion engendered by it, and before cooling time, as the law wisely defines that period, he had shot and killed deceased."

In State v. Tally, 102 Ala. 34, 15 South. 724, evidence of letters showing a liaison between deceased and a sister of the Skeltons, who took his life, was held to be irrelevant and immaterial because they had known the facts "long before the killing"; but the court said:

"Had they, immediately upon the receipt of these letters, and upon coming, in this or other way, to a knowledge of Ross's [deceased's] misconduct toward her, been moved by the tumult of passion, which the law holds such intelligence sufficient to provoke and engender, to take the life of Ross, and had taken his life while under the actual dominion of this overmastering passion before cooling time had elapsed, all this evidence would have been competent as negativing the premeditation and malice which are essential elements of murder, and thereby reducing the grade of their offense to manslaughter."

[5] These authorities point to the conclusion that this evidence offered by defendant in this case should have been admitted to the jury to be weighed by them. Whether it was true or whether it was manufactured for the occasion was a question for jury decision.

It is supposed that the authority of Warren v. State, 197 Ala. 313, 348, 349, 72 South. 624, induced the rulings referred to. The facts in that case were very different, at least the majority of the court interpreted the record to a very different effect. The ruling in that case did not undertake to deny the authority of the cases to which we have referred.

The judgment of the court is that the trial in this case was affected by prejudicial error in the respects pointed out. Other minor questions are not considered.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.