143 So. 213

## HIGDON v. STATE.

### 7 Div. 896.

Court of Appeals of Alabama.

June 30, 1932.

McCord & McCord, of Gadsden, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

Brief did not reach the Reporter.

SAMFORD, J.

The defendant killed Jess Wimberly by shooting him with a pistol. The difficulty occurred at or near the back door of the Wimberly dwelling at about 7:30 o'clock at night. Some thirty or forty minutes before the shooting there had been a row between defendant's wife and mother on the one side and Wimberly's wife on the other, in the back yard of the Wimberly dwelling, and when Mrs. Higdon got home she told defendant about it.

Armed with a pistol, defendant went immediately to the home of Wimberly, knocked on the back door, and, when it was opened either by Wimberly or his wife, asked for Wimberly. When the door was opened, the difficulty began. Deceased was shot, and from the effect died. Defendant was cut with a knife in several places seriously. The points at issue relate to what took place at the Wimberly door at the time of the beginning of the difficulty. The state contends and offers evidence tending to prove that Wimberly, the deceased, was sitting by his fire; that defendant knocked on the door, and, when the door was opened, asked for Winnerly or Wimberly, and, when told that Jess Wimberly lived there and Wimberly went to the door, defendant shot him and afterwards Wimberly cut defendant.

The defendant, on the other hand, contended and offered evidence tending to prove that he went to the Wimberly home on a peaceful mission to inquire into the differences between his wife and Mrs. Wimberly, that, when the door was opened, he was attacked by Wimberly, Mrs. Wimberly, and Wimberly's brother-in-law; that he was beaten, knocked down, cut, and, while down, he fired one time, striking Wimberly.

There are many objections to testimony and exceptions reserved to the rulings of the court. To deal with all of these specifically would extend this opinion to undue length. So we are dealing with the questions generally except in such instances where it is necessary to be specific.

The first exception relates to a remark of the solicitor in his opening statement to the jury in which he said: "If it should become relevant, we expect to show that these women came up there drunk." The practice of making opening statements to the jury as to what counsel expect to prove on the trial is unnecessary and useless, but, when allowed by the court, counsel should confine himself to statements based upon facts admissible in evidence, and the court will not allow counsel to take such opportunity to make statements not based on legal testimony and prejudicial to defendant. In this instance, however, the exception is so briefly stated as not to inform the court of enough facts upon which to base a ruling.

The coroner, who was also a mortician, was allowed to testify that he examined the body of deceased after death, that he probed the wound with one of his instruments, and to the range of the bullet as shown by such probe. This is not such testimony as to require its exclusion because the witness was not an expert. The witness gave no opinion, but stated facts as he found them. No scientific deductions were necessary.

■ It was relevant for the state to prove that there had been a difficulty at the Wimberly home, about thirty minutes before the fatal shooting, between defendant's wife and mother-in-law on the one side and Mrs. Wimberly, wife of deceased, on the other, but the details of that difficulty and what was there said by the parties not relating to the fatal difficulty were inadmissible.

■ There was some evidence tending to show that, while Mrs. Higdon and her mother were at the house of deceased, deceased went to a store near by and called the police over the phone. The details of this transaction, relating as it did to the row between the women, were all irrelevant and immaterial, and should not have been admitted. It was shown without dispute that the police came and went before Higdon ever came to the Wimberly home, and the calling of the police and their coming and going had no connection with the fight between defendant and deceased.

■■ The solicitor, over objection and exception by defendant, was allowed to prove by his own witness, Mrs. Wimberly, certain statements she had made and testified to under oath in a proceeding before the coroner. This evidence was not admissible for any purpose. If it was for the purpose of impeachment, it would not be legal, because a party may not impeach his own witness. If it was used to corroborate the testimony of the witness, it may not be done in that way. Pope v. State, 168 Ala. 33, 53 So. 292; Stanfield v. State, 3 Ala. App. 57, 57 So. 402; 28 Alabama & Southern Digest, Witnesses, ☜414(2).

■ The state, over objection and exception of defendant, was allowed to prove in detail a visit of deceased to the store of Charlie Watson, at which time he called the police, had a conversation with Watson, etc. It was relevant to prove that deceased was at the store as tending to fix the time of the difficulty, but as to what he did and who he called over the phone was not in any way connected with this defendant. He did not even know the defendant at that time or know that he would see him that night. What deceased did at Watson's store related only to the women and what had already transpired at his house.

■ Upon the examination of Mrs. Heyward, a witness for the defendant, defendant's counsel attempted by numerous ·questions to bring out the details of the difficulty between the women at the Wimberly home about thirty minutes before Higdon got there. We have already held that this could not be done. The court on all these questions ruled without error, except that, having allowed the state to bring out a part of the transaction in its examination of Mrs. Wimberly, the defendant was entitled to bring out everything that happened in that particular difficulty.

■ Dr. Walls, qualified and examined as an expert, could give his opinion of the effect of the wound found on deceased and the length of time he would retain his power of physical resistance after the wound had been inflicted. The court's rulings on admission of this testimony was free from error.

■ The witness, Barrett, having testified he was present and saw the difficulty, it was proper to allow the state on cross-examination to show that at that time this witness was under a twelve-month sentence in the county chain gang as tending to prove that he could not have been at the place of the difficulty. He having testified that he had paid the costs in the case, it was proper to cross-examine him as to how he happened to be at liberty, when by law he should have been in confinement. The authorities cited are not in point. This witness was not being impeached on account of the character of the crime, but by reason of the fact that he was in the custody of the law and could not have legally been where he said he was.

■■ The defendant sought to prove by himself, testifying as a witness, that about thirty minutes before the fatal shooting, the appearance and condition of his wife, her appearance when she came in the house, that she said: "If you came as near getting killed as I did, you'd be excited too"; that, "Jess Wimberly had threatened to cut my guts out." The court refused to permit the defendant to make this proof, and to this ruling defendant reserved exception.

In Bolton v. State, 209 Ala. 179, 95 So. 874, the Supreme Court held that the defendant was entitled to show that just prior to the shooting his sister had informed him, for the first time, that deceased some weeks before had made a felonious assault upon her and had attempted to ravish her. In the Bolton Case several decisions were cited in support of the holding; all of these citations were based upon assaults or its equivalent. This court followed the Bolton Case in the decision in Eden v. State, 24 Ala. App. 37, 129 So. 797. Evidence that defendant has been informed by a female member of his family that she has been outraged and attacked, whether such attack be on her person or her virtue or her character, may so arouse the passions suddenly engendered as that a homicide may thereby be reduced from murder to manslaughter. Such, in effect, is the holding in the Eden Case, supra, which extends the rule laid down in the Bolton Case, supra. The opinion in the Eden Case on this point is sustained by numerous authorities cited in support of the text in 30 C. J. p. 225 (457). So that, if the defendant's wife told him thirty minutes before the shooting that she had been attacked and insulted by the deceased, such evidence should go to the jury upon the

question of whether the homicide was committed with malice.

■ The solicitor in his closing argument sought to draw adverse inferences to the defendant because Mrs. Higdon and Mrs. Cranford had not been called to testify. These remarks of the solicitor were objected to, and, the objections being overruled, the defendant excepted. It has been universally held in this state that no unfavorable argument of counsel can be made because of the absence of testimony of a witness equally accessible to both parties. 8 Alabama and Southern Digest, Criminal Law, ☞721½.

■ The defendant takes exception to an excerpt from the court's oral charge as follows: "The law is so jealous of human life, that it requires him who undertakes to justify the taking of human life under the doctrine of self defense that he should run if he can do so without increasing his peril." The court also charged that the peril spoken of need not be real, but must be apparent.

In connection with the qualifying statement in the oral charge, the excerpt states that part of the law of self-defense relating to the doctrine of retreat. We said in Cooke v. State, 18 Ala. App. 416–421, 93 So. 86, 90: "This doctrine of retreat is sometimes referred to as being cowardly, but not so; it is based upon the highest consideration of civilization, morals and * * * religion. It is better that one man should flee rather than take human life." If a man can by running avoid the taking of human life, it is his solemn duty to do so, if by so doing he does not apparently increase his peril. It is not a cowardly doctrine. It is the law of the sovereign state which he is bound to obey; it is the law of God, which he ignores at his peril. Whether the word used is retreat, run, or flee, it means the same, and, if a more impressive word could be found, it should be used.

Other exceptions to the court's oral charge are without merit.

■ Refused charge 11 states a correct proposition of law, and should have been given, unless it is covered by other charges given at the request of defendant or in the oral charge of the court. If this is so, such fact has not been pointed out or called to our attention by the Attorney General in brief or otherwise.

■ Refused charge 10 has a tendency to mislead and confuse the jury. While it does state the law correctly from a professional standpoint, and would be understood by lawyers, such a charge, without explanation, is not or might not be clear to the mind of an average layman. In such case such charges should be refused.

■ Refused charges 12, 13, and 16 are sufficiently covered by the oral charge of the court.

For the errors pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.