31 So.2d 71

## THOMAS v. STATE.
### 8 Div. 356.

Supreme Court of Alabama.
June 19, 1947.

Rehearing Denied June 30, 1947.

Russell W. Lynne, of Decatur, for appellant.

A. A. Carmichael, Atty. Gen., and John O. Harris, Asst. Atty. Gen., for the State.

LIVINGSTON, Justice.

Appellant was tried in the Circuit Court of Morgan County upon an indictment charging murder in the first degree. The jury returned a verdict finding appellant guilty of murder in the second degree, and fixing his punishment at a term of ninety-nine years in the penitentiary. He appealed.

The evidence adduced upon the trial of this case for the State tended to show that on the night of December 13, 1945, Manford Chaffin, a white man, was stabbed on a public street in the city of Decatur, Alabama, and died shortly thereafter. The cutting occurred about eleven o'clock at night. The deceased was living over a store on Vine Street in the city of Decatur, which is the negro section of the town. His son, fourteen years of age, testified that he was upstairs in bed at the time he heard a fuss on the street, and he recognized his father's voice. He partially dressed and went downstairs. When he got almost to the bottom of the stairs he saw his father and three negro boys across the street; that his father was facing the boys, and that he saw one of the boys strike his father and run, followed by the other two boys. His father started across the street and was met by his son about middle ways the street, and the father fell in his son's arms. His son laid him on the sidewalk and propped him up against the wall of a building and went to get help. An ambulance soon arrived and carried deceased to the hospital.

Appellant was arrested the next day. When he was informed of the cause of his arrest and detention he denied any connection with the fight and homicide and gave the officers an alibi. The officers checked the alibi, which they found to be false. When appellant was informed of the officers' investigation of his alibi and

the result thereof, appellant confessed and stated that he did it for a friend without naming the friend. Appellant was in the neighborhood that night and was in a negro sweet shop a few minutes before the difficulty occurred. One of his own witnesses testified that he saw appellant and the other two boys at the time of the difficulty and that he did not see any weapon in the white man's hand, and further that the white man never did take his hand out of his pocket. That after the cutting he heard this appellant say, "Let's go." The evidence is in conflict as to whether or not the deceased was drinking at the time of the homicide. There is also conflict of evidence as to whether or not deceased said anything to the appellant and the other boys present at the time of the fatal stabbing. Witness for the appellant testified that the deceased said to the boys, "Stop or I will kill you." Appellant's son testified that he did not hear his father say anything.

Before arraignment appellant pleaded in abatement to the indictment, basing his plea on numerous grounds involving alleged irregularities by the jury commission in filling the jury box and in making the jury roll.

The only cause for questioning the sufficiency of an indictment by a grand jury duly organized and empanelled by a court having jurisdiction of the offense, and the time and method of doing so, is provided in Sections 278 and 279, Title 15, Code of 1940: see also, Section 285, Title 15, Code, and Section 46, Title 30, Code; Reese v. State, 228 Ala. 132, 152 So. 41; Wimbush v. State, 237 Ala. 153, 186 So. 145; Wilson v. State, ante, p. 29, 29 So.2d 294.

■ Nowhere in the plea is it alleged that the grand jurors who found the indictment were not drawn by the officer designated by law to draw the same, nor that the jurors were not drawn in the presence of the officers designated by law. The solicitor's demurrer points out the absence of such averments, and the trial court sustained it. The demurrer was properly sustained.

Charge 12, refused to the defendant, reads:

"If the defendant did not intend to kill Chaffin, then you cannot convict him of murder."

■ The charge states a correct rule of law, but was fully, adequately and properly covered in the trial court's oral charge. Its refusal was not error to reverse. Supreme Court Rule 45, Code 1940, Tit. 7 Appendix; Section 273, Title 7, Code 1940.

Appellant earnestly insists upon a reversal because of the following examination of State's witness Lewis Brown:

"Q. What size wound you say it was? A. About three-quarters of an inch long.

"Q. You did not probe the wound or did you go into the wound? A. Not to any depth.

"Q. From your experience as a mortician and examination of human bodies that died from these kinds of wounds, was a cut of that kind calculated to produce death?

"Mr. Lynne: We object.

"Court: Overruled.

"Mr. Lynne: We except.

A. Yes, sir."

■ To authorize a witness to testify as an expert, it must appear that by study, practice, experience or observation as to the particular subject, he has acquired a knowledge beyond that of ordinary witnesses. Clemmons v. State, 167 Ala. 20, 52 So. 467; Daniel v. State, 31 Ala.App. 376, 17 So.2d 542; Hicks v. State, 247 Ala. 439, 25 So.2d 139; Phillips v. State, 248 Ala. 510, 28 So.2d 542.

■ The nature of the wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown to be familiar with such questions: such as a mortician, or others showing competency. Hicks v. State, supra. Whether a witness is shown to possess the requisite qualifications is a preliminary question resting largely in the discretion of the trial court. Hicks v. State, supra, and authorities therein cited.

Mr. Brown testified that he had had twenty-one years active experience as a mortician; that during that time he had occasion to examine a large number of

persons who had died from wounds, inflicted wounds like stabs, knife cuts, and injuries of that sort. He also testified as to the location of the wound found on the body of Chaffin: that it was near the heart.

In view of the predicate laid, we are unwilling to hold that the trial court abused its discretion in permitting witness Brown to express his opinion that a cut of the kind found on Chaffin was calculated to produce death.

The State introduced a written confession signed by the appellant. The predicate laid for its admission was sufficient. The confession was identified by Mr. Whitmire, the chief of police of the city of Decatur, in whose presence it was dictated and signed. Before the written confession was offered in evidence, but after preliminary proof sufficient to show that it was voluntary, the following occurred:

"Q. Did he make any statement to you? A. Yes, sir.

"Court: Chief, did anybody suggest to him in your presence that it would be better for him to tell it, just how it happened? A. No, sir.

"Q. Then just relate to the jury the story he first told, and then the whole thing.

"Mr. Lynne: Mr. Whitmire was this statement reduced to writing? A. Later.

"Mr. Lynne: And signed by the defendant? A. Yes, sir.

"Mr. Lynne: We object.

"Mr. Hutson: Now, was the first statement that he made reduced to writing? A. No, sir.

"Q. We are asking about his first statement.

"Mr. Lynne: Yes, sir, and I am asking about the statement that was reduced to writing and signed by the defendant, they are bound by it.

"Court: Which of the statements are you seeking to offer now?

"Mr. Hutson: This is in the nature of a confession and statement from the defendant, and we are proposing to prove that this defendant first denied knowing anything about the killing.

"Mr. Lynne: We object to that statement, it is made to inflame the minds of this jury against the defendant.

"Court: Gentlemen of the jury, go with the bailiff into this room and remain in there until I send for you. (Jury goes into the jury room.)

"Court: I overrule the objection.

"Mr. Lynne: We reserve an exception.

"Court: Let the jury come back.

"Q. Now, Mr. Whitmire, what did he first say about this?

"Mr. Lynne: We make the same objection.

"Court: Overruled.

"Mr. Lynne: We reserve an exception.

"A. We picked him up and told him what we had him for and he said he did not know anything about it and told us he was with a certain girl, and told us where she lived, and we checked on that and had that in our minds, what this party had said, and went on to the hall and began to talk to him about it.

"Q. He denied knowing anything about it? A. Yes, sir.

"Q. And after you talked to him and told him what you knew about having checked the case— A. Yes, sir.

"Q. Then what did he say? A. He said, 'well, I was doing it for a friend,' and didn't call the friend's name.

"Q. After he said he was doing it for a friend did he make any statement as to whether or not he stabbed the man? A. After he began to talk to me about what he had done he admitted he struck the white man. He referred to him as the 'tall white man', with a switch bladed knife in his right hand.

"Q. Then did he say what he did after he struck him with the switch bladed knife?

"Mr. Lynne: We object, that is all in that written instrument, isn't it Mr. Whitmire? A. What I am fixing to say now is, yes.

"Mr. Lynne: We object.

"Court: I will hold you to your written statement.

"Q. After he told you all this, what did he say about whether he objected to reducing it to writing? A. I asked if he minded telling it slower so that I could write it down, and he said he didn't.

"Q. Did he tell it to you slowly? A. Yes, sir.

"Q. And then you wrote it down? A. Yes, sir.

"Q. Did you read it to him after you wrote it down? A. It seems that he read it.

"Q. Did he sign it? A. Yes, sir, he did.

"Q. Is that the statement that you wrote down while he told it to you? A. This is it."

We are not here concerned with the question as to whether oral testimony is admissible to prove the contents of a confession which was reduced to writing and signed. More properly, it is the question of the admissibility of two confessions, one oral and the other written.

The written confession introduced is as follows:

"No. 1. 12/14/45.

"I, Samuel Thomas, Jr., make this statement, voluntarily and and of my own free will to officers Whitmire, Kilgore and Broaderick of the Decatur, Alabama, Police Department.

"I make this statement knowing that it may be used against me, no threats or promises or any nature have been made to me.

"I am 18 years old. I was (born) Nov. 15th, 1927. I have a Sixth Grade Education. I was in Sweet Shop at 601 West Vine Street about 10:30 P.M. last night. Carlile got ready to close up. I happened to look out across the street and saw a drunk white fellow, 'a tall fellow'. This white fellow and Jr. McDonald, they call him Jr. Scott, he live in West Town. He is a low, short, dark fellow. This other colored boy was over there in the weeds looking for some bricks. Scott knows him. Jr. Scott had an old pistol, it was a toy pistol, this tall white fellow had a gun look like I couldn't say it was a gun, I went out there I seen it look like a gun. I tried to get Jr. Scott and that other boy to come on away from out there. When I walked out there the white man ask me what I want out you Black Mother fucker, I didn't say nothing, then I turnt to walk off, me and Jr. and the other boy, the white man was about as close to me as that phone on your desk he wasn't out of hand reach of me when he run his hand in his pocket. I grab him by his hand and open my switch blade knife. I thought he had a gun. I wasn't taking no chances and I just stabbed him. I stabbed him once with my knife in my right hand then I turned and run, the white man caught the other boy that was with Scott and I could see this boy sticking the white man with a knife. This boy finally got loose and him and Jr. Scott and me went on down Vine Street and I turned left on Washington Street and went home. I was standing in front of second house from Sweet Shop when this boy, who I don't know his name, and was standing there with Frank Carlile and his little boy, Charles Aaron Orr and Joe D. Patterson while this boy was cutting the white man.

"I have read this statement of two pages and it is true to the best of my knowledge and belief."

 No error intervened in admitting either statement.

We have carefully examined the record, and find no error to reverse.

Affirmed.

GARDNER, C. J., and BROWN and SIMPSON, JJ., concur.