45 So.2d 478

**CHANDLER v. STATE.**

**4 Div. 95.**

Court of Appeals of Alabama.

Jan. 10, 1950.

Rehearing Denied Jan. 31, 1950.

E. O. Baldwin and A. R. Powell, Jr., of Andalusia, for appellant.

A. A. Carmichael, Atty. Gen., and M. Roland Nachman, Jr., Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The difficulty upon which this prosecution is based, as shown by the record, occurred on November 17, 1947, at about first dark, and at that time the two participants, viz.: the appellant, and the injured party, Ralph Goodson, were total Strangers, never having seen each other before.

The evidence disclosed that the difficulty grew out of a trivial matter, but it tends to show also that the appellant entered into the fight willingly; hence the question of self-defense is not involved.

At the time in question the evidence disclosed that Goodson, the injured party, was nineteen years of age, and while his exact size and weight does not appear, he was at the trial referred to as "this little boy." The appellant testified that he, appellant, was fifty-one years of age, and weighed 200 pounds.

The record shows that the testimony of the physician and surgeon who attended Goodson at the hospital a short time after the difficulty, whose qualification as such was voluntarily admitted by counsel for appellant, said in response to questions, viz.:

"Q. On November 17, 1947, did you attend Ralph Goodson? A. I did, yes, sir.

"Q. Did you dress and take care of his wounds? A. I did.

"Q. I will ask you to tell the jury and show them on Mr. Goodson where the cuts

were, and when you explain each cut if you remember how deep they were tell the jury, and what they cut, if they cut a muscle or anything. A. These cuts on his neck was cut here, one across this way and come around to the angle of the jaw and had cuts under his arm way down here, and here, and all across here and here and here (indicating on his body).

"Q. Now how deep were the cuts on his neck? A. Went through all the muscles and down to the bone in here. It cut the nerve and he has no feeling in this part here, called the cervical nerves. This cut came at an angle here and the artery and vein were exposed. Another one-eighth of an inch the boy would have died immediately. These cuts on his arm went through the muscle but not to the bone. These three different cuts here. This cut in his back cut through the muscle and all the way down to the bone, and these on the shoulder went to the shoulder blade, and this one back here went down nearly to the kidney. This one here went down to what we call the auxillary arteries and veins. This one on this shoulder over here was a stab wound and went down to the lung and he had some bleeding in the plural cavity.

"Q. Would you say those wounds were such as to cause death? A. Yes, sir, in my opinion.

"Q. Had he lost much blood? A. Yes, he had. We had to give him a blood transfusion. He has no feeling in this side of his neck. The cervical nerves were cut here, and he has no feeling in this side. He has a weakness of his in his left arm. That is a total and permanent disability, and this went to the lung. He actually had air in the lung cavity."

No objection was interposed to the above-quoted testimony of the physician, but after its conclusion, the defendant moved the court to exclude the statement "if the cut had gone another one-eighth of an inch." The court overruled the motion and defendant reserved an exception.

■ Pretermitting the manner in which this question is presented, we hold there was no error in the ruling complained of, for it having been shown that the wounds on Goodson's neck were in close proximity to the jugular vein, it was relevant and proper to prove by the attending physician and surgeon the relative positions of the arteries and veins in the neck and the dangerous character of the wounds. In our case of Higdon v. State, 25 Ala.App. 209, 143 So. 213, the "Physician, qualified and examined as expert * * * could state his opinion as to effect of deceased's wound and length of time he would retain power of physical resistence after infliction thereof." See also, 6 Alabama Digest, Criminal Law, p. 401, ⊙473.

■ Charges 1 and 2 refused to defendant were affirmative in nature and from what has been said were properly refused. There is no phase of this case which entitled the defendant to a directed verdict.

Other questions presented are so clearly free from error no discussion is necessary.

Affirmed.