473 So.2d 582 (1985)
Donald Ray MEADOWS
v.
STATE.
6 Div. 524.
Court of Criminal Appeals of Alabama.
February 12, 1985.
On Return to Remand May 14, 1985.
Rehearing Denied June 11, 1985.
*583 John R. Hollingsworth, Hollingsworth & Clary, Fayette, for appellant.
Charles A. Graddick, Atty. Gen., and Jean Alexandra Webb, Asst. Atty. Gen., for appellee.
PATTERSON, Judge.
The appellant, Donald Ray Meadows, was indicted and convicted of the offense of assault in the first degree, which is proscribed by § 13A-6-20(a)(1), Code of Alabama 1975. He was subsequently sentenced to a term of thirty years' imprisonment.
Although Meadows did not contest the sufficiency of the State's evidence either at trial or on appeal, we include a rendition of the facts presented by the prosecution as follows:
The victim, Michael Parrish, went to his half-brother's house on August 22, 1983, to see his ex-wife, Shirley, who was living *584 there with the appellant, Meadows. He wanted to ask her about the identity of the father of her baby. When he arrived, only Meadows was there. Parrish asked Meadows if he could talk to Shirley about the baby and he assured him that he would not harm her. Meadows replied that he did not care.
After they drank a little rum, Parrish's brother joined them and the three of them walked up the road to a house where Parrish bought Meadows, his brother, and himself a beer.
Then, Meadows and Parrish's brother left and Parrish went back to his half-brother's house where he met Shirley. After Parrish and Shirley talked awhile, Meadows returned. They continued talking. After Parrish followed Shirley into a bedroom, Shirley got mad at him and hit him with a pair of scissors. Parrish took the scissors away and pushed Shirley. She then left and Meadows came into the room. Although Parrish did not have a weapon, or threaten Meadows that day, Meadows stabbed him in the side with what looked like a butcher's knife. Then Meadows walked out.
At trial, Parrish testified that, as a result of this injury, he stayed in the hospital almost three weeks and he presently has problems with his legs and hands to such an extent that he is unable to work.
The defense presented evidence that, as the result of an argument between Parrish and Shirley, Shirley armed herself against Parrish's advances with a pair of scissors. After Parrish seized the scissors, he slammed Shirley against the wall. Then Meadows entered the room, Parrish grabbed the scissors, and Meadows stabbed him.
During presentation of the prosecution's case, the physician who treated Mr. Parrish, Dr. Chandran, gave the following testimony:
"Q ... In August, 1983, did you have an occasion to treat a patient by the name of Michael Parrish?
"A Yes, sir.
"...
"Q What was his condition when you first saw him?
"A He was in shock. He had no blood pressure and no pulse and he was just completely confused and shouting something a little bit, but he was in a very serious condition and he was bleeding from the area where he was stabbed.
"Q Would you describe ... the nature of the injury that you worked on him for?
"A Yeah. He was brought inside the emergency room at which time he was in the condition I just described and since blood was gushing out of the wound here and he was in such a serious shock or the impression was that he was severely bleeding from something in the abdomen. So, within five or ten minutes we rolled him into the operating room and cut open the abdomen and we saw that there was a two inch wide cut going through and through the liver from the inferior surface to the superior surface almost near the anterior edge ... of the liver and actually we first saw almost about three thousand cc of fresh blood in the abdomen as soon as he opened up and it was all coming from the liver....
"...
"Q ... So, half of his blood was already lost?
"A Right .... And, we operated on him for seven hours and we gave him thirteen bottles of blood in that period....
"...
"Q ... Doctor, do you have a judgment as to the length of the wound from the entrance point on the body to the end of the cut there?
"...
"A The length would have been at least six inches from the point of entry...."
Then, the following occurred:
"Q ... Doctor, is this injury one that you would classify as a serious injury?
"MR. CLARY [Defense Counsel]: Objection, that would be for the jury to decide.

*585 "THE COURT: I think the doctor is qualified to testify to that. Overruled. "A I think it is one of the most severe injuries that we ever see, this kind of a liver injury.
"...
"Q In your opinion, Doctor, would Mr. Parrish have lived without this surgery?
"A No."
Meadows contends that the trial court erred in allowing, over specific objection, Dr. Chandran, an expert witness,[1] to testify that injuries inflicted upon the victim of an alleged first degree assault were serious injuries. He specifically argues that this testimony consists of the physician's opinion on an ultimate fact in issue and that it constitutes a conclusion involving the application of a legal definition, for § 13A-6-20(a)(1), Code of Alabama 1975, defines the offense of assault in the first degree as follows: "A person commits the crime of assault in the first degree if ... [w]ith intent to cause serious physical injury to another person, he causes serious physicial injury to any person by means of a deadly weapon or a dangerous instrument."
The general rule, as reiterated by this court in Bell v. State, 435 So.2d 772, 775 (Ala.Cr.App.1983), is as follows:
"It is a general principle of evidence that a witness may not testify to the ultimate issue in the case. Pointer v. State, 283 Ala. 320, 216 So.2d 713 (1968) (fire of incendiary origin was set); Colvin v. State, 247 Ala. 55, 22 So.2d 548 (1945) (fire of incendiary origin); Spooney v. State, 217 Ala. 219, 224, 115 So. 308 (1928) (defendant was still driving recklessly); Wyatt v. State, 405 So.2d 154, 157 (Ala.Cr.App.1981) (patient was a victim of child abuse); Lee v. State, 42 Ala.App. 101, 102, 154 So.2d 45, cert. denied, 275 Ala. 695, 154 So.2d 46 (1963) (defendant killed son); Vinson v. State, 29 Ala.App. 234, 236, 194 So. 705 (1940) (defendant murdered victim); Stewart v. State, 27 Ala.App. 315, 317, 172 So. 675 (1937) (defendant raped victim); Taylor v. State, 20 Ala.App. 161, 163, 101 So. 160 (1924) (defendant assaulted victim).
"However, a properly qualified expert may state his opinion as to the nature, cause, and effect of a wound or injury, Thomas v. State, 249 Ala. 358, 360, 31 So.2d 71 (1947)...."
Our Supreme Court in Colvin v. State, 22 So.2d 548 at 549 (1945), expressed the circumscription of the application of the general rule to the testimony of an expert, as follows:
"If [the expert's] ... testimony constituted an opinion on a matter of common knowledge, then it was inadmissible. Decatur Car Wheel & Manufacturing Co. v. Mehaffey, Adm'x, 128 Ala. 242, 29 So. 646 [(1901)]. On the other hand, if the subject involved a field appropriate for expert testimony, then the testimony was admissible even though it was in practical affirmation of a material issue in the case. Watson v. Hardaway-Covington Cotton Co., 223 Ala. 443, 137 So. 33 [(1931)]."
This holding exemplifies the modern trend of authority, which is against absolute prohibition of expert testimony consisting of opinion upon an ultimate issue. E.g., Bell v. State, 435 So.2d at 776; C. Gamble, McElroy's Alabama Evidence, § 127.01(5) (3d ed. 1977); McCormick on Evidence, § 12 (3d ed. 1984).
We conclude that the trial court did not abuse its discretion in allowing Dr. Chandran to state his opinion of the extent of the victim's injuries. A review of pertinent precedent indicates that such testimony can reasonably be considered to be outside the realm of common knowledge. For example, in affirming the trial court's allowance of the expert's opinion that the particular wound was in fact calculated to produce death, the Supreme Court in Thomas v. State, 249 Ala. 358, 31 So.2d 71, 73 (1947), stated that "[t]he nature of the wound or injury, its probable cause and effect can be stated by expert medical witnesses, or witnesses shown to be familiar with such questions...." In conclusion, *586 the court stated, "In view of the predicate laid, we are unwilling to hold that the trial court abused its discretion in permitting witness Brown to express his opinion that a cut of the kind found on Chaffin was calculated to produce death." Id. In Chandler v. State, 35 Ala.App. 109, 45 So.2d 478, 479, cert. denied, 253 Ala. 565, 45 So.2d 480 (1950), in ruling that the trial court properly permitted opinion evidence by the assault victim's physician as to possible death if cuts had reached the jugular vein, the court stated that "it was relevant and proper to prove by the attending physician and surgeon the relative positions of the arteries and veins in the neck and the dangerous character of the wounds." Likewise, in Buffalow v. State, 34 Ala.App. 418, 41 So.2d 417, 419, cert. denied, 252 Ala. 536, 41 So.2d 420 (1949), the court concluded that, in an assault case, the attending physician was properly allowed to state that in his opinion the inflicted wounds were life-threatening, for "[t]he extent and nature of these wounds related to matters of material inquiry." See also Ledbetter v. State, 24 Ala.App. 583, 139 So. 299 (1932) (wherein the court determined that the trial court did not err in permitting the physician attending the assault victim to testify about the details and extent of the wounds and the effect of these wounds on the brain).
Finally, we find very appropriate the resolution of the exact issue now before us by the Texas Court of Criminal Appeals in Hale v. State, 154 Tex.Cr. 630, 229 S.W.2d 796 (1949). There, the attending physician of an aggravated assault victim was asked the following question: "[I]n the light of your treating and medical experience as a licensed and practicing physician and surgeon, state whether or not those injuries that Clark Johnson had were serious bodily injuries?" After the appellant objected on the grounds that the question called for a legal conclusion and an illegal opinion and, as such, invaded the province of the jury, the physician was allowed to answer affirmatively. With the following explanation, the appellate court adjudged the answer admissible:
"The witness was an expert physician and surgeon, and should know the area injured by the blow, the arteries, nerves and other portions of the human anatomy affected thereby; he knew the possible effects of such injury and the possible danger caused thereby. The jury were not supposed to know what portions of one's bodily structure could be, and doubtless were, involved in this stricken area, nor what effect violence thereon would necessarily have."
229 S.W.2d at 798. See also Cordero v. State, 164 Tex.Cr. 160, 297 S.W.2d 174, 176-77 (1956).
In addition to concluding that the physician's opinion was proper as outside the realm of common knowledge, we also find that his opinion does not constitute a conclusion entailing the application of a legal definition. While the phrase used in the question addressed to Dr. Chandran, "serious injury," was virtually identical in meaning to the statutory phrase "serious physical injury," it also has importance in general popular usage. Therefore, we will not hold that the use of the phrase will frustrate the otherwise proper opinion testimony of an expert. Cf. 7 Wigmore, Evidence § 1975, at 165-66 (Chadbourn rev. 1978) (stating that since the statutory or contractual phrases encompassed in opinions as to physical disability to pursue an occupation are "also common in general popular usage, the opinion rule ought not to stand in the way of opinions offered by persons having the requisite knowledge of the party's physical condition.") (Footnote omitted.)
Finally, although we are convinced that the physician's characterization of Parrish's injuries was proper, any possible error was not so prejudicial as to "warrant the severe condemnation of a reversal of the defendant's conviction." Bell v. State, 435 So.2d at 778. Foremost, the facts to which Dr. Chandran's opinion related had already been extensively delineated by competent evidence to the jury, thus rendering his opinion harmless. Tanner v. State, 21 Ala.App. 14, 105 So. 712, cert. *587 denied, 213 Ala. 554, 105 So. 713 (1925). "[U]nder the influence of ... the doctrine of error without injury in criminal cases, the principle that where a witness, though improperly allowed to state a conclusion of fact, states also the specific facts upon which that conclusion is based, so that the jury can draw their own conclusion therefrom, no presumption of injury arises from the admission of his conclusion, and a reversal cannot be based upon it." Evans v. State, 120 Ala. 269, 25 So. 175 (1899).
Furthermore, the particular opinion sought to be elicited by the question was substantially the same as testimony already in evidence without any objection, for the physician had already stated that Parrish "was in a very serious condition." Even the erroneous admission into evidence of a witness's conclusion is not prejudicial where the witness has already given substantially the same testimony without objection. Wade v. State, 349 So.2d 141, 147 (Ala.Cr.App.1977). See also Higginbotham v. State, 24 Ala.App. 40, 129 So. 713 (1930). Accordingly, Meadows has failed to meet the requirements of A.R.A.P. 45; not only has he failed to show error, but he has also failed to demonstrate that such alleged error was probably injurious. See Barnes v. State, 361 So.2d 390 (Ala.Cr. App.), cert. denied, 361 So.2d 396 (Ala. 1978).
We need not address Meadow's final contention, for his objection, motion to strike, and request for instruction presented no specific ground of objection to the trial court. A general objection which specifies no ground preserves nothing for our review. E.g., Hughes v. State, 412 So.2d 296, 298 (Ala.Cr.App.1982).
While Meadow's issues raised no error prejudicial to the verdict and judgment of guilty, we remand this case for resentencing. Assault in the first degree, if perpetrated by the use of a deadly weapon, is a Class B felony which is punishable by imprisonment for not more than twenty years or less than ten years. Ala.Code (1975), §§ 13A-5-6, -6-20. For aught that appears in the record, the provisions of the Habitual Felony Offender Act were neither applicable nor administered. Accordingly, because Meadows's sentence of thirty years' imprisonment is excessive, this cause is remanded with the instructions that the trial court conduct another sentencing hearing and make a prompt return to this court.
REMANDED, WITH DIRECTIONS.
All Judges concur.

ON RETURN TO REMAND
PATTERSON, Judge.
This cause was remanded to the trial court with instructions to conduct another sentencing hearing and make due return thereof. The record on appeal failed to disclose that the Habitual Felony Offender Act was applicable or administered, and, therefore, from the appearance of the record, the sentence of thirty years' imprisonment was excessive.
The trial court has fully complied with our directions and filed its return. From the comments of the trial judge in the return, it appears that the Habitual Felony Offender Act was invoked at the prior sentencing hearing, but the proceedings relating thereto were omitted from the record. Nevertheless, pursuant to our instructions the trial judge conducted a new sentencing hearing, where the Habitual Felony Offender Act was invoked and proof of one prior felony conviction made.
The trial court found that in the instant case appellant had been convicted of the crime of assault in the first degree, a Class B felony, which is punishable by imprisonment in the penitentiary for a term of from two to twenty years. The trial court further found that appellant had been previously convicted of another felony, and pursuant to § 13A-5-9, Code of Alabama 1975, his punishment for assault in the first degree must be enhanced so that he will be punished as though he had been convicted of a Class A felony. Therefore, the proper range of sentence in this *588 case, as provided by § 13A-5-9, supra, is imprisonment for life or for any term of not more than ninety-nine years but not less than fifteen years.
The trial court adjudged the appellant guilty of assault in the first degree and sentenced him to be imprisoned in the penitentiary for a term of thirty years. This sentence was within the range of sentences authorized by law and is proper.
We have reviewed the entire record and find no reversible error therein. The conviction and sentence of the trial court are therefore due to be affirmed.
AFFIRMED.
All the Judges concur.

ON REHEARING
PATTERSON, Judge.
Appellant raises two issues in his application for rehearing. In his first issue he argues that the trial court erred in allowing Dr. V.R. Chandran to testify, over objection of appellant, that the injuries inflicted upon the victim were serious injuries. We fully addressed this issue in our original opinion, and resolved it adversely to appellant. He raises nothing new in his application, in reference to this issue, which would merit further consideration by this court.
In appellant's second issue, he contends that the trial court erred in applying the Habitual Felony Offender Act in sentencing him because there was no proof that he was represented by counsel or waived counsel during the proceedings leading to his prior conviction. We find no merit in this contention. The supplemental record on return to remand discloses that the State proved one prior conviction for a felony by introducing into evidence a properly certified copy of the minutes of the Circuit Court of Dallas County, Alabama, reflecting the conviction. State's Exhibit No. 1. These minutes disclose that the appellant waived indictment and plead guilty to an information charging him with the commission of the crime of embezzlement on May 12, 1972. The minutes further reflect that appellant waived the right to counsel at these proceedings. Appellant was sentenced to two years in the penitentiary. The sentence was suspended and appellant was placed on probation for two years, conditioned on his good behavior, and ordered to pay $445.00 restitution and court costs. The minutes further show that his probation was revoked on July 13, 1972, and he was ordered to serve his sentence. When the minutes were introduced by the State at the sentencing hearing, the defense counsel made no objection, stating, "Your Honor, I have no objection provided it is certified." Appellant has been represented by the same attorney throughout the trial and post-trial proceedings. This issue is raised for the first time on application for rehearing. While the State bore the burden of proving a valid prior conviction in which appellant was either represented by counsel or waived same, it met that burden and established a prima facie case by the introduction of the certified copy of the minute entry. Harrison v. State, 465 So.2d 475 (Ala.Crim.App.1984); Tate v. State, 435 So.2d 190 (Ala.Crim.App. 1983); Douglas v. State, 406 So.2d 1051 (Ala.Crim.App.), cert. denied, 406 So.2d 1053 (Ala.1981). If the appellant had contended that the former conviction was invalid for enhancement purposes because of lack of representation, he would have borne the burden of presenting evidence in support thereof. Tate v. State, supra; Ray v. State, 398 So.2d 774 (Ala.Crim. App.), cert. denied, 398 So.2d 777 (Ala. 1981); Napier v. State, 344 So.2d 1235 (Ala.Crim.App.), cert. denied, 344 So.2d 1239 (Ala.1977). Appellant offered no evidence at the sentencing hearing to refute any part of the minute entry, and in fact consented to its admission. The minute entry was properly admitted in evidence and was sufficient to prove the prior conviction. The application for rehearing is due to be, and is hereby, overruled.
APPELLANT'S APPLICATION FOR REHEARING OVERRULED; OPINION EXTENDED.
All the Judges concur.
NOTES
[1] The physician's qualifications as an expert are not questioned.