The appellant was indicted by the grand jury of Montgomery County in its July term, 1975. The indictment stated that Margaret Frances Graham, ". . . unlawfully and with malice aforethought killed Linda Sankey by shooting her with a pistol, against the peace and dignity of the State of Alabama."
Appellant filed a plea of not guilty and waiver of arraignment on July 12, 1975. She was tried by jury on August 14, 1975 and found guilty of murder in the first degree and sentenced to life imprisonment in the State penitentiary. On August 15, 1975, sentence was pronounced and appellant gave notice of appeal. Appellant filed a motion for a new trial on August 27, 1975, which was denied on September 26, 1975. Appellant was allowed to proceed on appeal in forma pauperis, a free transcript was provided and counsel appointed to represent appellant on appeal.
This case is one which is often seen as the result of marital difficulties exasperated by that three-sided figure known as the "triangle."
On May 31, 1975, one Linda Sankey was shot and killed by appellant, Margaret Frances Graham, with a pistol. The events leading up to this unfortunate occurrence were substantially as follows.
On Monday, May 26, 1975, the appellant and her husband, Willie Graham, had an argument over several telephone calls that he was receiving which caused suspicion to the appellant. The appellant, subsequent to these arguments, moved out of the apartment where she and Willie Graham were living as husband and wife and moved in with her mother, Alvis Taylor. The address located at 529-A Clayton Court is where the Grahams lived.
On Wednesday, May 28, 1975, following the departure of his wife from their domicile, Willie Graham went to a bar or "Shot House" on the Mobile Road in Montgomery, Alabama, and began drinking. While there he was approached by Linda Sankey, the deceased, and she asked him if he would take her home. Willie Graham eagerly accepted the offer and then proceeded to escort the victim out dancing and drinking over the period of the next two days, to various dance halls in Lowndes County, Alabama. On Friday, May 30, 1975, the day before the killing, Willie Graham and the deceased stayed out drinking and dancing until the early morning hours of Saturday, May 31, 1975. They apparently agreed to spend the night with each other and arrived at his apartment at 529-A Clayton Court approximately 4:00 A.M. on the 31st and spent the remainder of the night there. Approximately 9:00 Saturday morning, May 31, 1975, Willie Graham got up and went to work, leaving Linda Sankey alone at the apartment.
That same morning the appellant, Margaret Frances Graham, made a call to her apartment at 529-A Clayton Court, obviously wishing to get in touch with her husband, and a woman, whom the appellant did not know, answered the telephone. The woman was Linda Sankey. Upon hanging up the telephone, the appellant and her mother proceeded to the apartment in a taxicab. During the cab ride the appellant asked her mother if she had her "thing," obviously referring to a pistol. In response to that question her mother answered, "yes." The appellant then requested that the pistol be given to her and her mother complied with this request.
Upon arriving at the apartment the appellant testified that she entered her apartment and encountered Linda Sankey. The appellant stated that she asked Linda who she was and Linda responded by asking appellant who she was. Thereupon, the appellant stated that Linda pulled a knife *Page 113 
from her pocketbook at which point the appellant pulled out the gun from her purse, that had been supplied by her mother in the taxicab, and fired two shots in rapid succession. The appellant stated that she then requested her mother to call the "law." However, Mrs. Taylor took the gun and placed it in a closet and then the appellant called the police.
The State placed into evidence through a neighbor, one J.D. Duncan, the testimony that he observed appellant and her mother approach the apartment building. He testified that the appellant went in the front door entrance and her mother went around to the rear of the apartment. The witness, Duncan, testified that subsequent to the appellant entering the apartment he immediately heard what he thought to be a gunshot and then, about ten seconds later, he heard another gunshot.
The defense put on substantially the same evidence as to that point, but the mother testified that the reason she went around to the rear was to buy a heater from a man who lived behind the apartment building. However, in her statement to the police, which was admitted into evidence, the appellant stated that her mother told her that she was going around to the back because she was afraid that Linda Sankey would "run from us." Also, the appellant and her mother testified that the shots were fired in rapid succession.
There was also evidence that the knife found on Linda Sankey's body was "like" one that the appellant owned and used as a steak knife.
 I
The appellant contends that the State failed to make out a prima facie case of murder in the first degree and that directed verdict of acquittal should have been given because the State failed to disprove that the killing was done in self-defense.
Murder in the first degree is the willful, malicious, premeditated and deliberate killing of one human being by another. In this case there is undisputed evidence that the appellant left her mother's apartment and went by way of a taxi to the apartment which she had moved out of, with a pistol that she had borrowed from her mother, knowing that there would be a confrontation between her and a strange woman. It is undisputed that appellant shot the deceased twice, killing her. Here, the appellant's use of a deadly weapon and all the surrounding circumstances were sufficient evidence from which the jury could have inferred the presence of all the elements required in murder in the first degree. All the evidence and its conflicts presented a question for the jury to determine and the evidence was sufficient, if believed by the jury, under the required rule to support the verdict in this case. Miller v.State, 38 Ala. App. 593, 90 So.2d 166; Rogers v. State,49 Ala. App. 78, 268 So.2d 859; Williams v. State, 51 Ala. App. 694,288 So.2d 753.
Must the State disprove the defense of self-defense in order to convict a defendant of murder? While the burden of proving the defense of self-defense never shifts to the defendant, self-defense, like alibi testimony and all other conflicting evidence in a criminal prosecution is an issue to be determined by the jury. Our cases state the rule to be that if all the evidence raises in the minds of the jury a reasonable doubt as to whether the defendant acted in self-defense, the defendant should be acquitted. Lester v. State, 270 Ala. 631,121 So.2d 110; Pounders v. State, 282 Ala. 551, 213 So.2d 394.
While it has been stated that the plea of self-defense is not an affirmative plea of confession and avoidance on which the defendant carried the burden, Vaughn v. State, 293 Ala. 365,304 So.2d 6, it is unquestionably the law that once the State adduces sufficient evidence to make out a prima case of homicide, in order for the defendant to be entitled to an acquittal on a plea of self-defense he must offer evidence which, when considered with all the other evidence, will produce in the minds of the jury, a reasonable doubt as to his guilt. *Page 114 Key v. State, 47 Ala. App. 692, 260 So.2d 422; Vaughn, supra.
In the instant case the jury obviously did not entertain a reasonable doubt that the killing was done in self-defense. There was ample testimony to which the jury could infer that the appellant went to the apartment to kill with intent to kill whomever she found.
The charge to the jury adequately covered all the points of law, at the conclusion of which the appellant's attorney stated that he was satisfied with said charge. Accordingly, this point is without merit.
 II
The appellant filed a motion for a new trial in which it was contended that a State's witness improperly spoke with one or more of the jurors during a recess of the trial. At the hearing, Alvis Taylor, the mother of the appellant, testified that she observed State's witness, J.D. Duncan, talking with jurors in the hall during a recess. Appellant cites: Mosley v.State, 54 Ala. App. 59, 304 So.2d 613, to support reversal on this point.
While it is generally true that the jury must be kept apart from others during a trial and no communications should be allowed to be made to them from the beginning of the trial to the end, where the trial judge makes a full and fair determination of the circumstances surrounding the issues of a juror talking to a witness, and he determines that there is no merit to the controversy and the complaint is totally groundless as to prejudice, his overruling of defendant's motion for a new trial will not be disturbed on appeal.
In the instant case a hearing was held on this point and several witnesses testified, including the juror involved. The trial judge overruled appellant's motion based upon each and all of the testimony given at said hearing. From the transcript of the hearing there is no evidence that the trial judge abused his discretion in this matter in his finding that any contention of prejudice arising out of this incident was totally without merit.
The foregoing opinion was prepared by Honorable CHARLES R. CROWDER, Circuit Judge, temporarily on duty on the Court of Criminal Appeals pursuant to subsection (4) of § 38, T. 13, Code of Alabama 1940, recompiled 1958; the Court has adopted his opinion as its own.
The judgment below is hereby
AFFIRMED.
TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.