The grand jury of Madison County returned an indictment against the appellant, Johnny Ray Cox, charging him with the first degree murder of James Eddie Thomas, by shooting him with a pistol. Appellant entered a plea of not guilty. A jury found the appellant guilty of murder in the second degree and fixed his punishment at one hundred and fifty years imprisonment in the penitentiary. The trial court entered a judgment in accordance with the verdict and appellant appeals to this Court. Appellant filed a motion for a new trial, and it was overruled by the trial court. *Page 1055 
The appellant was at all proceedings in the trial court represented by counsel of his choice, and is represented in this Court by court appointed counsel. This appeal was submitted to this Court on briefs.
The appellant contends that the trial court erred to his prejudice on the following grounds: first, by overruling his motion to exclude state's evidence because there was no evidence to prove that the appellant committed the crime charged; second, by overruling appellant's motion for a new trial because the evidence was not sufficient to sustain the jury verdict finding him guilty of murder in the second degree.
State's witness, James Franklin, testified in substance the following: that he and his girl friend, Mary Briggs, and her two children lived at 2907 Temple Lane, Apartment E, Huntsville, Alabama; that before his death Eddie Thomas, the deceased, and his girl friend, Jackie Briggs, and her child lived there in the same apartment; that a short time before Eddie was killed Jackie and her child moved out; that about 10:00 o'clock on the day Eddie was shot James Franklin and Eddie left their home and bought three pints of gin and began drinking and riding around; that about 11:00 o'clock they went down to where Jackie was living with the appellant, Johnny Cox; that Eddie was drunk and got out of his car, talked with Jackie, drew a pistol on her, and threatened to kill her; that he took the gun away from Eddie and they got in the car and went home; that on the way home he gave the gun back to Eddie; that when they got home no one else was there except Mary, his girl friend, and her children; that he drank the rest of the gin, ate some ice cream, passed out and went to sleep on the couch, and slept until Mary, his girl friend, awoke him and told him someone had come in and killed Eddie; that he got up and found Eddie lying on the kitchen floor behind the stove dead with bullet holes in him; that Eddie had a .357 magnum gun nickel-plated with a bone handle; that the last time he saw Eddie alive that day he was standing in the floor drinking beer, and had the gun under his belt.
State's witness, Mary E. Briggs, testified in substance the following: that she lived at 2303 Apartment C, Butler Terrace, Huntsville, Alabama; that she was the mother of Mary who was living with James Franklin, and of Jackie who lived part of the year 1977 with Eddie Thomas, the deceased, and part of the year with Johnny Cox, the appellant; that it was in July when Jackie left Eddie and went to live with Johnny; that at about 12:30 o'clock on the day of October 10, 1977 she went over to Eddie's house and no one was there except her daughter, Mary, and her children; that later on James and Eddie came home; that Mary and her children went to the grocery store; that James drank a pint of gin, ate some ice cream, passed out and went to sleep on the couch; that Eddie was drinking and he had a gun in his belt and was sitting at the front door in a chair when she went out on the porch, and just as she was sitting down in the swing the appellant, Johnny Cox, came around the house and went up on the porch; that she saw the tip end of a blue or black gun in his right hand; that Johnny went right on into the house and in a short while she heard a gun shot and jumped up off the porch and ran down the street hollering, and she heard another shot, and she heard another shot; that she did not know who was doing the shooting; that she went back to the house and saw Johnny come out the front door he went in; that when Johnny came out she was on the left side of him, and did not see a gun; that Johnny did not say anything to her or the other people there, but just went right back around the house like he was going to Shannon Street; that the shooting occurred in Huntsville, Madison County, Alabama, at about three-thirty in the afternoon.
State's witness, Sam Lanier, Jr., a Huntsville police officer, testified in substance the following: that on October 10, 1977, about 4:30 o'clock, P.M., he received a call to be on a lookout for the appellant, Johnny Ray Cox; that about 5:17 o'clock P.M. he stopped Johnny's car, and Johnny got out with his hands up in the air, and said where the weapon was without being asked; that *Page 1056 
he looked on the front seat of Johnny's car and saw the weapon lying there; that he arrested Johnny and kept his car under observation until Officer Cantrell arrived; that he turned Johnny's car and the gun over to Officer Cantrell; that he transported Johnny to jail; that Johnny said he was on his way to the jail when his car was stopped.
State's witness, Gene Cantrell, testified in substance the following: that he was an officer of the Huntsville Police Department; that on October 10, 1977, about 5:30 P.M., he arrived at the scene where Officer Lanier had appellant under arrest; that Lanier's patrol car was parked next to appellant's car; that he observed a weapon in appellant's car, and kept it under observation until Officers Parker and Brewer arrived at the scene; that after the gun was photographed he observed the gun to get the model, make and caliber; that the gun was a .357 magnum and was chrome plated and shiny.
State's witness, Bud Parker, testified in substance the following: that he was employed by the Huntsville Police Department on October 10, 1977 as a Crime Technician, and that his duties consisted of taking photographs, making diagrams, and collecting evidence at the crime scene; that he arrived at the crime scene at 4:20 P.M.; that the appellant was not at the crime scene, but there were several people present; that he found the body of the deceased lying on the floor of the kitchen on its back; that he photographed the scene, made measurements and diagrams of the scene, and photographed the wounds on the chest, neck, head area of the body, and of three slugs in the floor under the chest of the body, after it was moved, and of the stove; all these photographs and diagrams were introduced in evidence; that he recovered one slug from inside the stove and three slugs from the floor directly under the place where the chest of the body was lying before it was removed; that the three slugs recovered from the floor entered the floor straight down from where they went into the body of deceased; that he photographed the pistol in appellant's car before it was removed; it was chrome plated, and was later turned over to the toxicologist together with the four slugs.
State's witness, Patrick Dillaha, testified in substance the following: that he was employed by the Huntsville Police Department and was an investigator on the homicide and robbery squad; that he directed the investigation of the killing of the deceased; that he arrived at the scene of the shooting at 4:10 o'clock P.M., on October 10, 1977; that the deceased was shot six times; that when he arrived at the scene of the shooting the deceased was dead; that two guns were used in the shooting; that one was a .38, and was never found; that he searched the apartment of the deceased and found no gun; that four slugs were recovered at the scene; that the gun found in the appellant's car belonged to the deceased.
State's witness, Brent Wheeler, of the State of Alabama Department of Toxicology and Criminal Investigation, after stating his qualifications, testified in substance, as follows: that he examined the .357 caliber magnum pistol found in appellant's car and the four slugs found in the body of the deceased and the four slugs found at the scene of the shooting of the deceased; that due to the condition of the eight slugs he examined he could not say that any of them were fired from the gun found in the appellant's car; that in his opinion two different types of weapons were used in the firing of the slugs; that of the four slugs removed from the body of the deceased one was fired by a different type of gun than the other three, and of the four recovered at the scene of the shooting one was fired by a different type of gun than the other three.
State's witness, John Kilbourn, of the Alabama Department of Toxicology and Criminal Investigation, after stating his qualifications, testified in substance, as follows: that on October 11, 1977 he examined the body of the deceased; that there were six gunshot wounds on the body; that in one wound the slug went from front to back, left to right, passing through the *Page 1057 
heart, and was recovered in the body; that in another wound the slug penetrated the body front to back, right to left, and in an upward direction, and went through the body; that in another wound the slug penetrated the body in a right to left, front to back, and upward direction through the body, and was reflected back into the exit wound and recovered there; that another wound was a glaze type gunshot wound located on the left abdomen area, the slug went from front to back and upward; that another wound was located on the right side of the neck two and a half inches to the right of an anterior mid-line of the neck with the slug ranging from right to left, front to back, and upward, and was recovered from the body; that another wound was on the left portion of the head and was located two and three-fourths inches above the left ear canal and one and a half inches behind the left ear canal, the slug ranged from left to right, back to front and slightly upward, and was recovered from the body, this wound was a contact wound which means that the barrel of the gun was held in direct contact with the scalp; that in his opinion the cause of the death of the deceased was either hemorrhage associated with the gunshot wound to the chest or cerebral trauma associated with the gunshot wound to the head or a combination of the two.
The state rested its case and the appellant moved to exclude the state's evidence on the ground that there was no evidence linking the appellant personally with the crime that has been committed. Appellant's motion was denied by the court.
The appellant's witness, Peggy King, testified in substance, as follows: that on October 10, 1977 she lived about five doors from Johnny Cox, the appellant; that Eddie Thomas, the deceased, with another man, came to the home of Johnny at about 10 or 11.00 o'clock, A.M.; that she saw Eddie having an argument with Jackie; that he was holding a shiny gun on her and was telling her that if she breathed too hard, he was going to blow her head off; that Jackie got away from Eddie and went in the house; that Eddie beat on the door and Jackie would not come out and Eddie said that he would be back and left.
The appellant's witness, Barbara Langford, testified in substance the following: that she lived next door to the appellant, Johnny Cox; that she knew Eddie Thomas, the deceased, in his lifetime and that she knows James Franklin; that about 12:30 on October 10, 1977 she saw Eddie and James come to the home of Johnny; that Jackie Briggs was on the back porch talking to Eddie; that Eddie had a silver gun in his hand slinging it around; that when she saw the gun, she went right back in the door of her house and stayed inside; that Jackie and her son lived there with Johnny Cox.
Appellant's witness, Ezell Smith, testified in substance the following: that he knew Johnny Cox, the appellant, in October of 1977; that he lived next door to him; that on October 10, 1977, about 8:30 that morning, he saw Eddie Thomas, the deceased, and a man riding around in his community drinking; that about 11:30 or 12:00 o'clock he was up the street when he saw Eddie go into Ezell Smith's apartment; that he went to see what Eddie wanted; that deceased asked him where the mother of Johnny Cox lived, and he told Eddie that she lived next door, and Eddie went over there; that he went in his apartment for a few minutes, and then started to come out of his door when he saw Jackie standing on her porch, and Eddie was waving a big "ole shiny pistol" at Jackie, and Eddie was using profane language; that he heard Eddie tell Jackie he would blow her brains out; that he just closed the door and went back inside his apartment and stayed there.
Appellant's witness, Billy Lee Rice, testified in substance, as follows: that Johnny Cox, the appellant, was at Billy Lee Rice's home from eight-thirty until about three o'clock on the day of October 10, 1977, and that he and Johnny spent the time working on Johnny's car, and they did not have anything to drink during the time.
Appellant's witness, Mary Batts, testified in substance, as follows: that she is a sister of Johnny Cox, the appellant; that on October *Page 1058 
10, 1977 she and her two children, her mother whose name is Betty Hund, Jackie and Johnny Cox all lived at 108-D Madison Court; that Johnny had been living there since the last of August; that around noon Eddie Thomas, the deceased, came to the back door of the apartment and asked to see Jackie; that Jackie went out on the porch and talked with Eddie; that Eddie held a big shiny like gun on Jackie, and told her he would blow her brains out if she breathed, and that if he could not have her, nobody else could; that about 3:30 Johnny came home and went in the house; that in a short time Johnny left in his car, and after about thirty minutes returned home; that Jackie had a three year old child by Johnny; that during the year 1977 before August Jackie lived with Eddie.
Appellant's witness, Jackie Briggs, testified in substance, as follows: that on October 10, 1977 she was the common law wife of the appellant, Johnny Ray Cox; that about eight-thirty on the morning the deceased, Eddie Thomas, was shot Johnny left home and went to Bill Rice's house; that she, and Mary Batts, and Mary's two kids were at home; that she had lived with Eddie from 1976 until in September, 1977; that when she stopped living with Eddie, she started living with Johnny; that on October 10, 1977 Eddie came to her home and asked Mary to tell her to come out he wanted to talk to her; that she went out, and he wanted her to come back to him, and he told her that if he couldn't have her, nobody else could; that she asked him why he came over to Johnny's house because Johnny didn't come to his house and bother him because he did not have any business over there; that Eddie said that he came to kill us both; that he pulled out a big shiny gun and put it up to her head and told her if she breathed right, he would blow her damn head off; that James Franklin then got out of the car, came over and hit Eddie on the hand that he had the gun in, and she went in the house and closed the door; that Eddie kicked on the door, and as he was leaving he said he would be back; that about three-thirty Johnny came home; that Johnny asked her what had happened and she told him, and he said he was going and talk to Eddie to reason why "he don't have to be coming back over here and upsetting the family"; that Johnny got in his car and left and was gone for about thirty minutes, and when he came back home, he had blood on his shirt, and then in about five minutes he left again in his car and she did not see him again that day.
The appellant, Johnny Ray Cox, testified in substance the following: that he has known the deceased, Eddie Thomas, since 1966; that the deceased and Johnny had built time at Atmore Prison together; that he got out of jail on August 21, 1977; that on August 22, 1977, when Jackie was living with Eddie in Huntsville, he had a friendly visit with them; that in the latter part of August Jackie started living with Johnny; that on October 10, 1977 at about 3:30 he came to his home from Bill Rice's; that his mother, and later on Jackie, told him what had happened; that Jackie told him that Eddie was looking for him and her and would kill them if he ever caught them together, and that he would be back if Johnny didn't come over and talk to him; that he then went over to Eddie's house; that Eddie was in the living room, and was drunk; that there was a man in the room lying on the couch; that he told Eddie that he did not want him to come over to his home disturbing his mother, wife and kids any more; that Eddie told him that if he could not have Jackie, that Johnny could not have her as long as he lived; that he told Eddie that, well, maybe he could talk to him some other time; that Eddie said there "ain't going to be na're other time"; that as he started to leave he turned his back to Eddie, and Eddie came out from under his jacket with his gun; that he was afraid to run because he might get shot in the back so he turned and grabbed the wrist of the hand that Eddie had his gun in; that they got in a scuffle that ended up on the floor in the kitchen; that he was unable to take the gun away from Eddie; that during the scuffle while they were in the bedroom the gun went off two times, they continued scuffling and got in the kitchen and Eddie *Page 1059 
was on top of Johnny; that Johnny still had hold of Eddie's wrist of the hand with the gun in it with Eddie's finger on the trigger because through the pressure on the gun it went off again and Eddie rolled over; that blood was all over Johnny, and he thought he was shot; that Johnny panicked, and he picked the pistol up from he floor and came out of the house with it and went back home where Jackie was; that he told Jackie that he and Eddie had a few words and a shooting took place and that he thought he had killed Eddie through a mistake and that he was going to the City Hall and turn himself in; that when the officer stopped him, he got out of his car with his hands up and told the officer that the gun was on the front seat of the car; that the officer handcuffed him and put him in the back seat of the officer's car; that he had no gun when he went over to Eddie's and that he did not fire another pistol when he was in Eddie's apartment.
On cross-examination the appellant testified in substance the following: that he and the deceased had never had any cross words or trouble before October 10, 1977; that on July 30, 1968 he was convicted for an assault with intent to murder; that in 1973 he was convicted of manslaughter in the first degree; that in December, 1975 he was charged with five cases of assault with intent to rob, and he agreed to plead guilty to two and three were dismissed; that the gun found in his car would only hold six cartridges.
The state and the appellant stipulated that if defendant's witness, Bill Rice, was recalled to the stand, he would testify that within a week or a week and a half before the alleged event involved in this case he saw the deceased, Eddie Thomas, with a gun at a club in Huntsville and at the time the deceased said he was planning to kill the defendant. The stipulation was given to the jury by the court and the defense rested.
The state recalled James (Bud) Parker who testified in substance; that he took the clothing from the body of the deceased and turned it over to Mr. Brent Wheeler; that he saw Johnny Ray Cox on October 10, 1977 and he did not have on a torn T-shirt and blood all over him; that there was one little spot of blood on his T-shirt in the chest area.
The state recalled Officer Wheeler who testified in substance the following: that there was not a jacket turned over to him and identified as being taken from the body of the deceased; that only a T-shirt and regular shirt were turned over to him.
State's evidence was sufficient to present to the jury the question as to whether or not the appellant committed the crime charged, and the trial court did not err in overruling his motion to exclude state's evidence, and his motion for a new trial on the ground that the evidence did not support the jury verdict.
Where the evidence raises a question of fact for the jury, and such evidence, if believed, is sufficient to sustain the verdict, the overruling of a motion for a new trial is not error. McHellen v. State, Ala.Cr.App., 351 So.2d 689; Young v.State, 283 Ala. 676, 220 So.2d 843; Fields v. State, Ala.Cr.App., 333 So.2d 861.
No other rulings of the trial court are argued in appellant's brief.
As provided by Alabama Code, 1975, Title 12-22-240, we have searched the record for any errors prejudicial to the appellant and have found none.
The judgment of the trial court should be affirmed.
The foregoing opinion was prepared by the Honorable Joseph J. Mullins, a retired Circuit Judge, serving as a Judge of this Court under the provisions of Section 6.10 of the new Judicial Article (Constitutional Amendment No. 328, Act # 1051, 1973); his opinion is hereby adopted as that of the Court.
The judgment below is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 1060