Robbery; twenty-five years.
On August 15, 1978, Michael Prince was in charge of the Crestwood Pharmacy in Jefferson County, Alabama. He testified that, at approximately 4:40 P.M., an individual wearing jeans, a hat and a stocking over his face entered the store carrying a machine gun. According to Prince, the intruder shouted, "Hit the f_ floor. I've got a f_ machine gun." Prince said the man was directing these remarks to different people as he passed them going to the drug counter. Prince testified that, when he was approached by the intruder, he asked Prince to give him the "dope," then handed Prince a plastic bag. The witness stated that the machine gun was pointed at his face part of the time and at his body part of the time. Prince said the appellant was approximately a "foot, foot and a half away." Prince stated, "I was looking in his face."
Prince made a positive identification of the appellant in court, and the witness stated that he had viewed the appellant for approximately three or four minutes. Further, the witness said that, prior to leaving the store, the appellant approached the candy and tobacco counter and asked the saleslady for all the money. Prince said the lady handed over the money to the appellant. Later, it was determined that approximately one hundred dollars in cash was taken. Also, Prince gave a list and the value of approximately one dozen drugs which were taken.
During cross-examination, Prince testified that he was a "relief pharmacist" at the Crestwood Pharmacy and that Grace Habshey, Jesslyn Whaley and Greg Kearley were also working on the day of the robbery.
According to the witness, the appellant was with Prince the majority of the three to four minutes he was in the store. Prince *Page 146 
stated that the appellant "wore over his head a light-colored stocking, woman's hose which came down to about his chin."
Prince recalled that, after the police arrived, he gave the robber's description as five feet, nine inches tall, 155 pounds, brown hair, and unknown color of eyes. Further, Prince said that the man had "the beginning of a five o'clock shadow like he hadn't shaved in a day or so." Prince stated that he indicated to the police, "[I]t looked like the starting of a mustache."
Prince acknowledged that he, along with the others, was upset by the robbery and that the ladies were crying. Prince testified that a day or two after the robbery he was shown about six or seven photographs by Detective Miller. The witness did not identify the appellant from those photographs. Prince said that he did not recall seeing any photograph of the appellant at that time, and, during the three or four times the witness was shown photographs, he, to the best of his knowledge, did not see a photograph of the appellant. Prince did indicate to Sgt. Miller that some of the photographs of the individuals bore characteristics similar to those of the appellant. The photographs were also shown to Whaley, and Kearley, but Prince did not recall that they indicated in any way that the photographs resembled the person who had committed the robbery.
According to Prince, Miller returned approximately three times in order to get everyone to view the photographs. About five weeks after the robbery, Prince went to a lineup. Prince said the people he viewed in the lineup were not any of those he had seen in the photographs and that, when asked if he could identify anyone in the lineup, he made an identification. However, before he made the identification, Prince had asked the individuals to repeat the statements which the robber had said at the time of the robbery. Prince testified that, although Officer Miller entered the room where the lineup was conducted, he did not make any remarks to indicate that the person who robbed the pharmacy was in the lineup. Prince recalled that the appellant was standing in position one at the lineup. Prince's in-court identification of the appellant was based on the lineup and the witness's recollection of the appellant in the pharmacy. Particularly, what caused Prince to identify the appellant were "the facial features" and the fact that he acted in the same manner in the lineup as he did during the robbery. According to Prince, the appellant was "real jittery, real nervous."
Prince denied that his identification of the appellant was based on the voice. Prince admitted that he wore contact lenses, that he was nearsighted, and that he had astigmatism.
During further questioning, Prince recalled that he had attended a preliminary hearing and that, at the time of the preliminary hearing, he identified the appellant.
At the conclusion of Prince's testimony, the defense moved to exclude the State's evidence on the ground that the State had failed to prove a prima facie case. Further, the defense argued that the State had "failed to lay the predicate in direct testimony as to the lineup sufficient to give the witness's identification sufficient credibility to be allowed."
This motion was overruled, and the appellant called Walter Enoch, a court reporter in Jefferson County, who testified that, on October 27, 1978, he reported a hearing involving the appellant in Judge Nice's court. Enoch identified two photographs which were introduced into evidence during that hearing and which were in his possession from the time of the hearing until his appearance in court. According to Enoch, the photographs were introduced when Officer Miller was giving his testimony.
Gregory Kearley was working at the Crestwood Pharmacy on August 15, 1978, as a pharmacy extern. Kearley recalled that a man entered the pharmacy "waving a gun, telling everyone to get on the floor and said that it was a holdup." Next, the man proceeded to the rear of the pharmacy where Prince was located and demanded Dilaudid, Demerol and Codeine. According to Kearley, he saw the man when he entered the *Page 147 
store, when he proceeded to the rear where the pharmacy was located, and when he was leaving the store. Kearley described the man's clothing as bluejeans and either a fatigue jacket or a jean jacket. Further, Kearley said that, the man was wearing "some kind of hosiery" over his face, but wore no hat. According to Kearley, the man did not have a mustache, was five feet eight inches to five feet nine inches tall, weighed approximately 150 pounds, had dark brown hair and was alone.
Kearley recalled that he was shown some photographs by Detective Miller, who came to the pharmacy within two or three weeks after the robbery. According to Kearley, he was shown photographs on three or four occasions, and he identified some of the individuals as looking "similar" to the person who robbed the pharmacy. During the trial, Kearley was shown defendant's Exhibits A and B which he identified as the pictures which "were similar to those of the robber."
Approximately three weeks after viewing the photographs, Kearley attended a lineup, but did not identify anyone at that time. Kearley recalled that the appellant was in position number one.
During cross-examination, Kearley stated that "there was no one in that lineup that looked familiar to me, as far as facial appearance." However, he did say that the body build and size of the person in position number one were familiar. He recalled that, during the robbery, he observed the robber for about five seconds while he was lying on the floor. Kearley acknowledged that Prince spent more time with the robber than anyone else in the store. The witness said that the robber and Prince were within one foot of each other and were face to face during their conversation.
Kearley testified that he was not saying that the appellant was not the person who robbed the store. However, the witness added that he was not saying that either one of the men pictured in the photographs was not the robber.
Jesslyn Whaley, a pharmacist assistant at the Crestwood Pharmacy at the time of the robbery, recalled, "[S]omebody came in yelling that there was a robbery for everybody to hit the floor. He was yelling obscenities. And he told them to do it because he had a powerful machine gun." She said the man wore a "black mask or hose" pulled down below his chin. Whaley testified that she was behind the prescription counter at the time the man came in and that she could not say whether the man wore a hat.
Whaley acknowledged that Detective Miller had shown her some photographs of persons who had similar characteristics to the man she had seen in the pharmacy during the robbery. She stated that she did not attend the lineup and that she had never seen the appellant before.
On cross-examination, the witness said that she was within three or four feet of the person who robbed the pharmacy and viewed him for only a minute. Whaley remembered that he was not very tall and "wasn't heavy built." She testified that she was not saying that either of the men in the photograph was the person who robbed the pharmacy, but she was merely saying that they had characteristics similar to the robber.
During the trial, the State and the defense entered into a stipulation that Grace Habshey's testimony given in a prior hearing would be read and considered as testimony which Habshey would give if she were present.
Habshey's testimony was that she was working at the front of the Crestwood Pharmacy as a cashier at the time of the robbery. According to Habshey, a man entered the store and said, "Everybody hit the floor. This is a holdup." She said that she immediately hit the floor and did not look at the man. When he returned from the rear of the pharmacy, he approached her register and demanded that she give him all the money. After handing over the money, she resumed her position on the floor. Habshey stated that she was unable to identify any of the photographs shown to her, but she could not say, definitely, that the appellant was not the robber. *Page 148 
Detective Howard L. Miller of the Birmingham Police Department testified that in August, 1978, he investigated the robbery which occurred at the Crestwood Pharmacy. He stated that, after the robbery, he took, on three occasions, photographs to the pharmacy for the employees to view. Miller said that the first occasion was a day or two after the robbery and that he had shown the photographs to Prince, Whaley and Kearley. The witness testified that the official report described the robber as a "white male, 24 years old, 5'9", 155 pounds, brown hair and a mustache. Unknown complexion. Unknown eyes."
Miller said when he took the photographs to the pharmacy on the second occasion, Kearley and Whaley identified two photographs as being "similar in characteristic." Miller identified defendant's Exhibits A and B as the photographs of Robert Gill and Forrest Allen Spears. Miller acknowledged that, on the first occasion when the photographs were shown to the people at the pharmacy, the photographs did not contain the appellant's photograph. However, Miller testified that on one occasion, he did show, to the people at the pharmacy, the photographs of the appellant which the witness had received from the county. He explained that the photograph was different in size and stated that he had shown it to Prince and, possibly, to Kearney.
Miller acknowledged that, within an hour after the robbery, the car used in the robbery was recovered. The automobile was found abandoned on railroad tracks near the pharmacy. Some drugs and nylon stockings were found in the car. Miller said that the car was fingerprinted and the prints were identified as those of George Stevens Shrader.
During cross-examination, Miller described Shrader as thirty-five years of age, shoulder length blond hair, approximately five feet six, or five feet seven inches in height, and light complexion.
Further, Miller stated that the appellant was arrested on August 23, 1978, along with Shrader. During further questioning, Miller testified that the photographs of the appellant, which he had shown to the people at the pharmacy, revealed that the appellant had a mustache. Further, Miller said that, at the time the appellant was arrested, he had a "light mustache."
During further questioning, Miller stated that, in a professional capacity, he was familiar with the name, Spears. Further, Miller testified that the fingerprints taken from the car were not identified as those belonging to Charles Robinson, the appellant. The witness did say that prints belonging to Forrest Spears were also found.
At the end of Miller's testimony, the appellant did not take the stand or present any further evidence. The case was subsequently submitted to the jury.
 I
The appellant contends that the trial court was in error when it denied his motion for a new trial based on newly discovered evidence.
A hearing was held on the motion for a new trial, and the appellant presented the testimony of Forrest Allen Spears. Spears stated that he knew the appellant, Charles Robinson. Also, Spears testified that he, alone, committed the robbery at the Crestwood Pharmacy. The witness admitted owning the car which was recovered after the robbery.
According to Spears, the appellant was not in the car at the time of the robbery and did not participate in planning the robbery. Although Spears did admit that other persons were in the car at the time of the robbery, he would not reveal the names of his companions.
During questioning by the court, Spears stated that he entered the pharmacy and told everyone to get on the floor. Afterwards, he went to the pharmacy counter where he directed the pharmacist to put the narcotics in a plastic bag.
During cross-examination, Spears guessed that five people were in the store during the incident and that one of the five was a female. The witness could not give the pharmacist's height, hair color or size. *Page 149 
Spears did say that he was five feet eight inches or five feet nine inches tall and weighed 130 pounds and that the pharmacist was "bigger." Spears acknowledged that, after the robbery, while driving the car from the scene, he hit a car parked near the pharmacy. However, he could not say whether the vehicle was a van.
During further questioning, Spears admitted that he had known Charles Robinson for about five years and that they were in the same cell block in the county jail for approximately one week after the robbery. Further, Spears admitted that he had been convicted for two burglaries, one grand larceny and two robberies. According to Spears, he was, at the time of the trial, serving thirty years in Holman prison. During further examination, Spears stated that he had decided to testify "because I couldn't look myself in the face every day if I knew somebody else was in prison doing twenty-five years for something I had done."
Although a new trial may be granted on grounds of newly discovered evidence which tends to prove that the crime for which the accused has been convicted was actually committed by another, the awarding of a new trial "rests in the sound discretion of the trial court, and depends largely on the credibility of the new evidence." Prince v. State, Ala.Cr.App.,356 So.2d 750, and the cases cited therein.
Further, the decision of the trial court will not be disturbed unless an abuse of discretion can be shown. McBryarv. State, Ala.Cr.App., 368 So.2d 568; Page v. State,57 Ala. App. 265, 327 So.2d 760.
As can be seen from the foregoing testimony, Forrest Allen Spears' testimony revealed that he was uncertain as to the details of the robbery and that he was reluctant to say who his companions were. Also, the inference could be drawn that, because of his association with the appellant, Spears had reason to give false testimony.
Based on the foregoing, we do not believe that the trial court abused its discretion in denying a motion for a new trial based on the newly discovered evidence that Spears, in fact, committed the robbery. The credibility of this evidence was for the trial judge to determine. The truthfulness or falsity of the evidence presented is not for this court to decide. Therefore, it is our judgment that the trial court was not in error in overruling appellant's motion for a new trial.
 II
The appellant insists that the prosecutor, during the final argument, made remarks which were prejudicial to the appellant and argues that the trial court erred when it refused to grant his motion for a new trial based on these prejudicial remarks.
From the record:
 "MR. GOMANY: Ladies and gentlemen, — to respond to Mr. White's argument. — all the information we know. Yeah, we sure do. We know all — That's why — the prosecutor's —. — to prosecute the ones that are guilty and dismiss the cases against the ones that are innocent.
 "MR. WHITE: I'm going to object to that, Your Honor, he has not decided — the Deputy District Attorney any guilt or innocence. That is not a proper statement —.
"THE COURT: I sustain it.
 "MR. GOMANY: We can dismiss a case by walking up to the Court and say, `Judge, we know' —.
 "MR. WHITE: I object to any further argument in this regard.
 "THE COURT: Well, I view it as an argument that has been held to be reversible. I'll have to sustain it."
In Lawson v. State, Ala.Cr.App., 377 So.2d 1115, the court stated:
 "The general rule is that improper argument of counsel is not a ground for a new trial or subject to review on appeal unless there is due objection by counsel or a motion to exclude, an adverse ruling thereon by the court, or a refusal of the trial court to make a ruling." *Page 150 
Also, in Stephens v. State, 250 Ala. 123, 33 So.2d 245, the court held that an objection must invoke corrective action on the part of the court "when the objection to the argument is sustained and when the sinister effect of the argument can be eradicated by action of the trial court" and, if he does not seek curative action, then no reversible error is found.
In determining whether argument by counsel was so prejudicial that it was ineradicable, each case must be determined on its individual facts. Smith v. State, 282 Ala. 268, 210 So.2d 826.
In the present case, the remarks by counsel for the State were not of such magnitude as to be ineradicable. Bailum v.State, 17 Ala. App. 679, 88 So. 200; Blue v. State, 246 Ala. 73,19 So.2d 11; Veith v. State, 48 Ala. App. 688, 267 So.2d 480.
Under the circumstances presented in the case at bar, and, in view of the fact that the appellant did not request curative action by the court after his objection was sustained, no question is presented for review by this court. Moore v. State, Ala.Cr. App., 364 So.2d 411; Holt v. State, 49 Ala. App. 582,274 So.2d 356; Veith v. State, supra; Hall v. State,24 Ala. App. 75, 130 So. 531.
 III
In the motion for a new trial, appellant maintains that the jury's verdict was contrary to the law in evidence and that the trial court erred by denying the motion. The question presented by the motion for a new trial was whether there was sufficient evidence to submit the issue being tried by the jury. Where evidence presented to the jury raises the question of fact for their determination, such evidence, if believed, would be sufficient to support the verdict. Cox v. State, Ala.Cr.App.,363 So.2d 1054; Young v. State, 283 Ala. 676, 220 So.2d 843. Under these circumstances, the overruling of the motion for a new trial would not be error. Also, the fact that only one witness positively identified the appellant establishes the fact of his guilt as firmly as it would have been established by the testimony of "an entire community." Haggler v. State,49 Ala. App. 259, 270 So.2d 690; Gray v. State, 38 Ala. App. 508,88 So.2d 798.
In the present case, Prince gave a detailed description of the robber and, prior to the lineup, identified the appellant from a photograph. Prince also identified the appellant at the lineup and made a positive identification of the appellant in court.
The appellant's witnesses gave testimony which may be in conflict with the testimony of the State's witness, Prince. A close reading of the record indicates that two other witnesses who were in the pharmacy at the time of the robbery selected photographs of Spears because he had characteristics similar to those of the robber. No one testified that Spears was the robber, nor did anyone testify that the appellant was not the robber. Also, Prince was the only person who was in close proximity (approximately eighteen inches) to the robber for several minutes and had the opportunity to view him.
The appellant, in the present case, did not persuade the jury that he was not the robber. In our judgment, there was legal evidence from which the jury could infer that the appellant was guilty. Therefore, the evidence was sufficient to pose a question of fact for the jury, and it was properly submitted for their determination.
We have examined the record and find no error prejudicial to this appellant; therefore, the judgment of conviction by the Jefferson Circuit Court is affirmed.
AFFIRMED.
All the Judges concur. *Page 151