Appellant was indicted by the March 1982 term of the Franklin County Grand Jury for first degree robbery, in violation of §13A-8-41, Code of Alabama 1975. At arraignment, appellant entered a plea of not guilty. A motion to suppress the identification of appellant was filed and denied. Appellant was tried before a jury and found guilty on April 21, 1982. On April 28, 1982, the court sentenced appellant to twenty years' imprisonment in the state penitentiary. A motion for a new trial was filed on May 17, 1982, and was overruled without evidence or argument being presented.
Jimmy Don Herring, the victim of the robbery, testified that he was employed as a security guard with the Alabama Limestone Company in Franklin County, Alabama, on the night of January 25, 1982. While patrolling the grounds late that evening in his car, he noticed a white car parked near a building located on the property of Alabama Limestone. He observed that the passenger side door was open and the interior light was on. Believing that the car belonged to his boss, but not being fully convinced that it was, he took his shotgun with him when he approached the building. As he approached the building, his flashlight illuminated a man who was kneeling in front of the parked car. The man held a shotgun and was pointing it at him.
Mr. Herring stated that the man ordered him to stop and to put his shotgun down. After complying with his assailant's demand, Mr. Herring was forced to surrender the keys to his car. Upon giving the man his car keys, the assailant got into the car and drove away. Mr. Herring testified that he got a "good look" at the person's face who held the shotgun on him and drove off with his car. At the trial, Mr. Herring was asked if that person was in the courtroom, but, after an objection by the attorney for the appellant, the witness was examined on voir dire.
On voir dire, Mr. Herring testified that, on the night of the robbery, he described the person that robbed him as being "a little short guy with a beard." After giving this description, Mr. Herring stated that two police officers from the Russellville Police Department showed him some "mug shots" of white males. He testified that "more than one" of the men in the mug shots had beards and that none of them was clean shaven with short hair.
Mr. Herring further testified that he did not know appellant's name at the time he viewed the mug shots, but that he had previously heard of appellant's name because of some prior trouble between appellant and Mr. Herring's employer, Buddy Rogers. Mr. Herring testified that Buddy Rogers, the owner of the quarry, told him that appellant had been accused of taking things from the quarry before the night of this robbery. He said that Buddy Rogers gave him a general description of appellant when he was hired due to the previous trouble between the two and that this general description fit the person who robbed him.
Appellant's attorney then asked that the photographs from which the identification of appellant was made be produced. The District Attorney did not have them but was prepared to offer testimony concerning the procedures used in procuring the out-of-court identification of appellant. The police officers involved in the identification process were called to testify and their testimony established the following: that Mr. Herring described the robber as a white male with a dark beard and dark hair; that between five and seven photographs of men with beards or "some type of growth on their face" constituted the photographic array shown to Mr. Herring; that the picture of appellant, with a beard, was included in this array; that all the men in the photographs were "about the same age;" that the array was given to the sheriff; and that no one suggested to Mr. Herring which picture to pick out. The court allowed the prosecution to continue but gave appellant *Page 635 
a continuing objection to all questions concerning appellant's identification.
The jury was returned to the box, and Mr. Herring identified appellant as being the person who robbed him.
Appellant contends that the trial court committed reversible error when it refused to suppress the in-court identification of appellant by the prosecuting witness. Appellant relies on the fact that the photographs from which the identification was made could not be produced after being properly requested since the sheriff had lost the pictures. By not being able to view these photographs, the appellant and the court were denied the opportunity to determine whether the pictorial display used in the lineup was prejudicial or suggestive.
Even if there has been an unduly suggestive pre-trial identification procedure, the in-court identification testimony need not be excluded if the prosecution can establish by clear and convincing evidence that the in-court testimony, rather than stemming from the unfair pre-trial confrontation, has an independent source. Brazell v. State, 369 So.2d 25, 29
(Ala.Cr.App. 1978) cert. denied, 369 So.2d 31 (Ala. 1979).
 "Whether an in-court identification has been so tainted by an extrajudicial identification as to vitiate the in-court identification is not to be determined solely by the circumstances of the extrajudicial identification, but all of the circumstances relative to the identification of defendant by the witness are to be taken into consideration, and if it is determinable therefrom that an in-court identification was independent of the extrajudicial identification, evidence of the in-court identification is admissible."
Matthews v. State, 361 So.2d 1195 (Ala.Cr.App. 1978).
In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382,34 L.Ed.2d 401 (1972), the United States Supreme Court listed five factors which should be considered in determining whether an independent basis exists for the in-court identification. See also Griffin v. State, 356 So.2d 723 (Ala.Cr.App.), cert. denied, 356 So.2d 728 (Ala. 1978).
 "(T)he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."
 Neil v. Biggers, 409 U.S. at 199-200,93 S.Ct. at 382.
We now apply the Neil standards to the facts of this case.
A. Mr. Herring had an opportunity to view the appellant at the time of the crime. He observed the defendant's face when his flashlight illuminated him kneeling beside the car. Although Mr. Herring did not state how long he observed the defendant, he stated that he "didn't take his eyes off of him" and that he definitely saw his face when his flashlight spotted him. He also testified that nothing was covering the defendant's face at the time of their encounter.
B. Mr. Herring testified that he froze when the shotgun was pulled on him at point blank range. After spotting the defendant with his flashlight, Mr. Herring stated that he thought that the defendant might be fixing to kill him.
C. The witness's prior description of the criminal was accurate. Stanley Woodard, an investigating officer of the Russellville Police Department, testified on voir dire that Mr. Herring gave a description of defendant the night of the robbery as to his hair color, approximate height, type and color of clothes the robber was wearing, and the color of his beard. From this description, Officer Woodard and Dannie Price, another Russellville policeman, were able to obtain a photograph of the appellant that evening that constituted a portion of the now challenged array.
D. Mr. Herring exhibited a high level of certainty at trial that appellant was the person who robbed him. When asked at trial whether he had any doubt in his mind *Page 636 
as to whether defendant was the person who robbed him, he answered, "no sir." In addition, Mr. Herring identified a photograph of the appellant the night of the robbery from a group of photographs he testified had more than one photograph that looked "like a short guy with a long beard."
E. The time between the robbery and the photograph lineup was extremely short since it was given the night of the robbery. The length of time between the robbery and in-court identification also was not exceedingly long since only approximately three months had elapsed since the commission of the crime on January 25, 1982, and the in-court identification which took place on April 21, 1982.
The in-court identification of appellant was clearly shown to have been based upon eyewitness observation of the robber at the time of the robbery.
The evidence in this case was in marked conflict but it is not within the province of this court to pass judgment on the truthfulness or falsity of conflicting evidence. Freeman v.State, Ala.Cr.App., 350 So.2d 768.
Appellant set up the defense of alibi. Alibi evidence is always a jury question. Freeman v. State, supra; Ala.Dig. Criminal Law, Key Nos. 739 (2), 741 (2).
There is no reversible error in the record and the judgment of conviction is affirmed.
AFFIRMED.
All the Judges concur.