Cleveland Horatious Ladd was indicted for theft of property in the first degree, in violation of § 13A-8-3, Code of Alabama 1975. The jury found the appellant "guilty as charged" and the trial judge set sentence at 15 years in the penitentiary.
Ms. Vastella Starks Gilbert testified that on the afternoon of February 15, 1984, at approximately 3:00 p.m., she stopped by Hudd's Food Store on her way home from work. As she approached the store, she passed by a black male standing near the entrance to the store. She described this person and then stated that the appellant was this person. As Ms. Gilbert left the store and began walking across the parking lot, someone grabbed her from behind and took her purse. She pursued this *Page 709 
person, identified as the appellant, and saw him get into a white car which quickly drove away.
Ms. Gilbert identified a check which had been written as one of her checks but she stated that she had not written this check. The check was made out for the sum of $55.00. Ms. Gilbert received most of her checks back via the U.S. mail. She was called to Brookwood Mall to pick up some of her credit cards which had been found in some bushes in the Mall parking area.
William Mangina testified that he was the owner of the Greenfront Grocery, located on 6th Avenue South. On February 15, 1984, Cleveland Ladd came into his store late that evening, along with another man. The appellant, and the man with him, presented checks to Mangina and asked him to cash them. The appellant told Mangina the check was for some yard work he had done for a woman. Mangina refused to cash the check when he recognized that the name printed on the check was the same as one he had cashed earlier that day, at approximately 3:30 p.m.
Juliette Caldwell testified that she was an assistant abuse counselor for JCCEO. Her office is located beside the parking lot of Hudd's Food Store. Her desk sits beside the front window of the office. On February 15, 1984, she was taking a break at approximately 2:45 p.m. During her break she was looking out the window and noticed the appellant standing beside the corner of the building. She stated that the appellant was "looking around the building, standing around looking back and forth". (R. 46). After she had been watching the appellant for some 30 minutes, she noticed Ms. Gilbert walking in the parking lot. As Ms. Gilbert went past the appellant, he grabbed her purse and began running and Ms. Gilbert began pursuing him. Ms. Caldwell and some of her co-workers went into the parking lot and called to Ms. Gilbert. Ms. Gilbert then came over to them, went into the JCCEO office and began calling her charge account holders and the bank. The police were also called.
After Ms. Caldwell's testimony, the State rested its case and appellant moved for a judgment of acquittal, which was denied.
The first witness for the defense was Mr. William Brown. Mr. Brown testified that he had known the appellant for some eight years. On February 15, 1984, at approximately 2:30 p.m., he saw the appellant at a "barbeque" on 6th Avenue South. Brown testified that there were a number of people present besides the appellant.
John Collins testified that he had known the appellant for approximately one and one-half years. On February 15, 1984, he was present at a barbeque on 6th Avenue South. Collins stated that he was there from 3:00 p.m. to 5:00 p.m. and that the appellant was there during that time.
Marvin May testified that he is serving a life without out parole sentence for a robbery conviction which he obtained in January, 1985. He stated that on the afternoon of February 15, 1984, he was with two men, Cranston and Megginson, at Hudd's Food Store. They had driven to the store in Cranston's white car. While there, May saw one Ronnie Stevens around the side of the store. May stated that, when Stevens saw a woman come out of the store pushing a basket, Stevens grabbed her purse and ran toward Tuscaloosa Avenue where someone picked him up in a black Malibu. May and his companions got in the white car and followed the black Malibu to Mason City. May stated that they went to Stevens' grandmother's house where he saw Stevens looking through the purse. May testified that Stevens found some credit cards and personal checks in the purse. May, Stevens, Cranston and Megginson then left and went to 6th Avenue where they saw the appellant at a barbeque. May, Stevens and the appellant then went to the Greenfront Grocery where Stevens got one of the checks cashed. It was approximately 4:00 p.m. when they went to the store.
Later that afternoon May, Stevens, Frank Williams and Stevens' girl friend went into Pizitz and Stevens' girl friend attempted to use a credit card. When the *Page 710 
cashier questioned her concerning the credit card, the three of them ran out of the Mall and threw the credit cards in some bushes. May further testified that he had been friends with the appellant since they were in the first grade.
Frank Williams testified that on February 15, 1984, he was at a barbeque on 6th Avenue from approximately 9:00 a.m. until 5:00 p.m. At that time, he went to the appellant's house until 7:00 p.m. Marvin May and Ronnie Stevens came to the house and Stevens asked if Williams could take them out to Brookwood Mall. He drove May and Stevens to pick up Stevens' wife and the group proceeded to the Mall. He went into a record store while the others went into Pizitz. A short while later he saw May, Stevens, and Stevens' wife running from the Mall.
The appellant, Ladd, testified that on February 15, 1984, he was at a barbeque on 6th Avenue all day long. At approximately 4:00 p.m., Ronnie Stevens and Marvin May came to the barbeque and asked the appellant to go to the Greenfront Grocery to cash a check. They went to the store and Stevens got a check cashed. They went back to the area of the barbeque and then got a ride to "Goldwire" with one of Marvin May's friends. They walked from "Goldwire" to the appellant's house where they stayed for about an hour. They left the appellant's house and went to Marvin May's mother's house, where they wrote out two checks from Ms. Gilbert's checkbook. Marvin May and the appellant then walked back to the Greenfront Grocery where they attempted to cash the checks. Mr. Mangina would not cash the checks because it was too close to closing time for the bank and he would not be able to get them verified. They left the store, went back to the area of the barbeque, then walked back to the appellant's house. Franklin Williams then gave appellant a ride to the "Circle N" and then Williams, May and Stevens drove off. The appellant then walked back to his house after the "Circle N" closed for the day at approximately 9:00 p.m. Appellant stated that the closest he got to Hudd's Food Store that day was about five miles.
Ms. Gilbert was recalled to the stand as a rebuttal witness where she again stated that the appellant was the man who took her purse.
 I
Appellant contends that the trial judge erred in overruling his objection to a portion of the prosecutor's opening statement. He argues that the prosecutor was allowed to engage in impermissible argument which was prejudicial to appellant.
The statement which the appellant contends constitutes reversible error is as follows: (R. 6)
 "You're going to be asked to make a decision in this case about who's telling the truth. No sense in beating around the bush about it, that's what it's going to come down to. Each one of you is going to look at these people and realize. . . ."
Defense counsel's objection to this statement was overruled by the trial court.
 "The purpose of an opening statement is merely to advise a jury on the issues involved in the case before them. Braswell v. State, Ala.Cr.App., 371 So.2d 992 (1979)."
Brown v. State, 401 So.2d 213, 216 (Ala.Crim.App.), cert. denied, 401 So.2d 218 (Ala. 1981).
 "`. . . The prosecution's opening statement to the jury on what it expects to prove should be confined to statements based on facts admissible in evidence. Higdon v. State, 25 Ala. App. 209, 143 So. 213 (1932). Counsel, however, is to be allowed considerable latitude in presenting to the jury in his opening statement what he expects the evidence to show. Rogers v. State, 49 Ala. App. 78, 268 So.2d 859 (1972) . . .' White v. State, 294 Ala. 265, 314 So.2d 857, 861-2 (1975), cert. denied, White v. Alabama, 423 U.S. 951, 96 S.Ct. 373, 46 L.Ed.2d 288 (1975), reh. denied, 423 U.S. 1039, 96 S.Ct. 577, 46 L.Ed.2d 415
(1975)." *Page 711 
Ex parte Baldwin, 456 So.2d 129, 136 (Ala. 1984), affirmed, ___ U.S. ___, 105 S.Ct. 2727, 86 L.Ed.2d 300 (1985).
 "It is a well-established rule that the scope and latitude of the opening statement are matters that rest within the sound discretion of the trial judge and his ruling should not be disturbed on appeal unless an abuse is shown. Winnings v. State, Ala.Cr.App., 370 So.2d 323, cert. denied, Ala., 370 So.2d 329 (1979)."
Brown, supra at 216; Braswell v. State, 371 So.2d 992
(Ala.Crim.App. 1979).
It is apparent from a reading of the record and close scrutiny of the above authorities that the prosecutor was engaging in argument which was improper. However, the appellant has failed to show that such argument was prejudicial to his cause or that the trial judge abused his discretion. On review, we fail to see how this prejudiced the appellant, and thus the error was harmless. Rule 45, A.R.A.P.
 II
Appellant argues that the trial court erred in allowing a prosecution witness to engage in speculation concerning the motives of a person that the witness observed and in allowing the witness to testify as to a conclusion that she had formed.
During the direct examination of State's witness Caldwell, the prosecutor asked the following question: (R. 46).
 "Was there anything going on with respect to the store or any people out in the parking lot that seemed to be in sequence with him coming around and looking around like that?"
Defense counsel objected to this question on the grounds that it called for a conclusion on the part of the witness. The trial judge overruled the objection and the witness gave the following answer: (R. 46).
"Well, the people was going in and out the store."
 "[A] witness, who has had an opportunity to observe (see, hears, feels, tastes, or smells, Fox v. Order of United Commercial Travelers [Travelers] of America, 192 F.2d 844 (5th Cir. 1982) [1952]) the facts concerning which he is to testify, may testify on his `belief', his `best recollection', his `impression', his `opinion', or his `understanding'." Butler v. State, 373 So.2d 347, 349
(Ala.Crim.App. 1979); C. Gamble, McElroy's Alabama Evidence, §§ 115.01 (1), 127.01 (1) (3rd Ed. 1977).
It is clear to this court that the witness testified solely as to what she observed. Hence, no error occurred here.
 III
Appellant, Ladd, argues that the evidence was insufficient to support the jury's verdict. Appellant argues that the testimony of the State's witnesses was insufficient to allow the case to go to the jury in light of his defense. We must disagree.
The victim in this cause and one other witness positively identified the appellant as the person who snatched the purse on the date in question. Appellant contends that he did not snatch the purse, that he was somewhere else at the time. Defense witness' testimony tends to support the appellant's alibi. Thus, there was a conflict in the evidence.
"A jury question is always presented where there is a conflict between the State's evidence and the defendant's alibi." Jeffers v. State, 455 So.2d 201 (Ala.Crim.App. 1984);Dill v. State, 429 So.2d 633 (Ala.Crim.App. 1982), cert. denied, 429 So.2d 633 (Ala. 1983); Williams v. State,412 So.2d 1274 (Ala.Crim.App. 1982).
 "When the evidence raises questions of fact for the jury and such evidence, if believed, is sufficient to sustain a conviction, the denial of a motion for acquittal, the refusal to give the affirmative charge, or the denial of a motion for new trial by the trial court do not constitute error."
Duncan v. State, 436 So.2d 883 (Ala.Crim.App. 1983); Cox v.State, 363 So.2d 1054 (Ala.Crim.App. 1978); Young v. State,283 Ala. 676, 220 So.2d 843 (1969). Conflicting evidence as to what actually took place *Page 712 
creates a question for the jury to resolve. McBryar v. State,368 So.2d 568 (Ala.Crim.App.), cert. denied, 368 So.2d 575
(Ala. 1979); Graham v. State, 339 So.2d 110 (Ala.Crim.App.), cert. denied, 339 So.2d 114 (Ala. 1976).
Further, "[a] verdict of conviction will not be set aside on the ground of insufficiency of the evidence, unless, allowing all reasonable presumptions for its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince this [c]ourt that it was wrong and unjust." Duncan, supra; Johnson v. State, 378 So.2d 1164
(Ala.Crim.App.), cert. quashed, 378 So.2d 1173 (Ala. 1979);Ward v. State, 356 So.2d 238 (Ala.Crim.App.), cert. denied,356 So.2d 242 (Ala. 1978). A verdict rendered upon conflicting evidence will not be disturbed on appeal. See Jeffers, supra;Stuckey v. State, 57 Ala. App. 85, 326 So.2d 150 (Ala.Crim.App. 1976).
In the case at bar, the jury heard all the evidence. They chose not to believe the appellant's version, i.e., that he was somewhere else at the time. We have carefully reviewed the evidence in this cause and find that the jury's verdict was not contrary to the evidence and that there was, in fact, sufficient evidence for the trial court to place the issues before the jury.
Having reviewed the evidence in this cause, it is clear to this court that the judgment of the trial court is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.